## Standard Tailoring Co. v. City of Louisville, et al.

(Decided February 27, 1913.)

Appeal from Jefferson Circuit Court.
(Chancery Branch, First Division.)

1. Taxation—Exemption of ''Manufacturing Establishments''—Tailoring Company Is Not.—A tailoring company that distributes samples of the cloth among local dealers who have the prospective purchaser select the style of goods, which selection is sent to the company, together with the purchaser's measurement or figure, and thereupon the clothing is manufactured in accordance with these specifications and sold to the merchant, to be re-sold by him to the buyer is not a manufacturing establishment in the meaning of an ordinance exempting such establishments from taxation.

2. ''Manufacture''—''Manufacturing Establishments''—Meaning of Words—How Construed.—The meaning of the words ''manufacture'' and ''manufacturing establishment'' has been adapted to meet the varying circumstances arising in the case or class of cases in which it was necessary to define them, so that the intent with which they were used might be accomplished. The purpose of the law-making body in using the word has always been allowed to have controlling weight in the decision of the meaning that should be attached to them.

WALTER S. MENDEL, for appellant.

JOSEPH S. LAWTON and CLAYTON B. BLAKEY, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The only question for decision in this case is whether or not the appellant company is a manufacturing establishment within the meaning of an ordinance of the city,

of Louisville exempting from taxation for a period of five years manufacturing establishments. The ordinance reads in part:

"That in order to induce the location of more manufacturing establishments within the city * * * * the same are hearby exempted for a period of five years after such location and the commencement of the business of manufacturing thereat from all taxation whatever by the city of Louisville on all property, real or personal, employed or used by such person, firm or corporation in conducting the business of such manufacturing establishment, and which would otherwise be subject to city taxation."

The business in which the appellant company is engaged is thus stated in its pleading:

"Plaintiff states that it has since its formation been engaged in manufacturing men's clothing. States that most of its manufacturing is of the kind technically known as 'tailors to the trade,' said term meaning that it does not manufacture clothing wholesale and sell by general sizes and lots, but that it distributes samples of its cloth among local dealers, largely country merchants, who have the prospective purchaser select a style of goods, which selection is sent in to the plaintiff, together with the purchaser's measurement or figure, whereupon the clothing is manufactured in accordance with these specifications and sold to the merchant to be resold by him to the buyer."

The words "manufacturing establishment" have been given a variety of meanings, depending largely on the circumstances surrounding the case in which they have been used. The result of this is that although the words have been often defined by the courts, few judicial precedents can be found that may be properly applied to any particular state of facts. Webster defines "manufacture" to be:

"The process or operation of making wares or any material products by hand, by machinery, or by other agency; often such process or operation carried on systematically with division of labor and with the use of machinery. Anything made from raw materials by the hand, by machinery, or by art, as clothes, iron utensils, shoes, machinery, saddlery."

And this definition in different forms of expression embodies the general idea that may be found in all the

cases where the word has come up for construction, but in applying it to the facts of particular cases in which the construction of ordinances or statutes were involved, the courts, especially in license and exemption cases, have found it necessary in carrying out the legislative intent in the use of the word to materially limit the scope of this general definition, which is broad enough to embrace almost every concern that is engaged in the business of changing the nature or quality of articles so that they may be used for whatever purpose they were intended.

Indeed we might say that the meaning of the words "manufacture" and "manufacturing establishment" has been adapted to meet the varying circumstances arising in the case or class of cases in which it was necessary to define them, so that the intent with which they were used might be accomplished. The purpose of the law-making body in using the words has always been allowed to have controlling weight in the decision of the meaning that should be attached to them, as may be seen by an examination of the number of cases cited in "Words and Phrases," vol. 5, title "Manufacture."

Keeping in mind then the purpose of this ordinance and the thought that the words should be given such meaning as was reasonably intended in their use, it must be at once manifest that if this broad definition of Webster should be given to the words as used in this ordinance, there are few establishments, whether large or small, that are engaged in the business of converting material from one form into another to make it more convenient or desirable for use that would not be entitled to the benefit of the exemption. The baker, the blacksmith, the carpenter, the shoemaker, the confectioner, the merchant tailor, the milliner, the dressmaker, and scores of others would escape taxation, although it seems quite obvious that it was not intended by the adoption of this ordinance to exempt from taxation the multitude of concerns that in some way or another are engaged in the business of changing the character of material from one form to another.

To give the ordinance the construction contended for would defeat in place of accomplish the result intended in its adoption, which was to induce the location in the city of new manufacturing establishments that would bring wealth into the city to increase its revenue when the period of exemption had passed, because the diminu-

tion in revenue by the exemption of the large class continually engaged in changing articles or material from one form to another would largely exceed the amount that might be produced as a result of the establishment of new manufacturing enterprises. Aside from this it would work gross inequality in the system of taxation; for example, the merchant tailor and the shoemaker would be exempt from taxation, while their next door neighbors, the clothing merchant and the dealer in shoes, would be taxed. So that while conceding that under a liberal definition of the words the appellant company might be entitled to the exemption, we are sure that when interpreted to carry out the legislative intent in granting the exemption, it does not bring itself within the fair or reasonable meaning of the ordinance, to the purpose of which reference should be constantly made in determining the class entitled to the favor of exemption.

We may also with much propriety observe that it would not be either safe or judicious to attempt any more accurate definition of the words "manufacturing establishments" than may be necessary to a decision of the precise question we have before us. The meaning that should be given to these words may come up in other cases presenting entirely different states of fact in which the meaning here ascribed to them would be both inappropriate and unjust, and therefore what we say upon the subject must be understood as referring directly to the question submitted in this record for our decision.

Although there is a dearth of controlling precedents there are a few general principles that it might not be amiss to notice. One of these is found in Victor Cotton Oil Co. v. City of Louisville, 149 Ky., 149, where it is said: "Exemptions from taxations are strictly construed. They are never construed as including things not fairly within the meaning of the words read as they are written."

Another is, as stated in Jones Brothers v. City of Louisville, 142 Ky., 759: "The right of taxation is never presumed to be relinquished, and before any party can rightfully claim an exemption from the common burden it is incumbent upon the party to show affirmatively that the exemption claimed is authorized by law. If there be a doubt upon the subject, that doubt must be resolved in favor of the state, and it is only where the exemption is

shown to be granted in terms clear and unequivocal that the right of exemption can be maintained."

Another is thus stated in City of Middlesboro v. New South Brewing & Ice Co., 108 Ky., 351: "It is well settled that exemptions from taxation are regarded in derogation of common right, and therefore are not to be extended beyond the exact and express requirements of the language used."

There are also a few cases from this and other courts that throw intelligent light on the subject. In Muir v. Samuels, 110 Ky., 605, the question came up whether or not a laundry was a manufacturing establishment in the meaning of the lien laws of the state, and the court, in holding that it was not, said:

"The only business of a laundry is to transform soiled into clean linen. It is true that this is done largely by means of machinery and requires the use of an engine and boilers and other appliances ordinarily used in manufacturing establishments, but after all nothing new is produced."

To the same effect is Com. v. Keystone Laundry Co., 203 Pa., 289.

In City of New Orleans v. Mannessier, 32 La. Ann., 1075, the court, in holding that an ice-cream confectioner was not a manufacturer within the meaning of the law exempting manufacturing establishments from taxation, said:

"We cannot assent to the proposition that a person making and selling ice cream is a manufacturer in the sense of the law or in any other sense of the word. The attempt to magnify a confectionery, which is defendant's business, into a manufactory must fail. We are told that any one seeing the steam engine, complicated apparatus, and large force needed to produce defendant's goods, would at once conclude that he was a manufacturer. With as much force it might be said that any one visiting the mammoth kitchen of the Grand Union Hotel at Saratoga, together with their myriads of employes and their collossal apparatus would at once magnify the cooks and pastry-men into manufacturers."

In Montana v. Johnson, 20 Mont., 367, in holding that a merchant tailor was not a manufacturer within the meaning of the tax laws, the court said:

"A manufacturer is one who makes or fabricates anything for use and within the literal definition of manu-

facturer would come a tailor who works cloths into suits for wear. So, too, a seamstress would be brought within such a definition, for she makes handkerchiefs from linen; and the carpenter who takes raw lumber and prepares it for building a house; and a milliner, who makes and sells bonnets; and a blacksmith, who makes horseshoes or forges iron; and the cook, who makes bread or other articles to use as food; and many other persons, whose pursuits in life demand the working of materials into certain forms. * * * We know of no technical meaning to be given to the word 'manufacture' used in the statute, and it is our best judgment that it should be understood in its popular sense. We therefore would include among the manufacturers those who produce goods from a raw state by manual skill and labor, and goods which are commonly turned out of factories, and we would exclude a merchant tailor, who merely cuts and fashions a suit of clothes as ordered by a customer, from cloth purchased elsewhere, and kept to be made up as suits are ordered from him.''

In Hearn v. Van Ingen, 7 Bush, 426, this court also ruled that a merchant tailor was not a manufacturer within the meaning of the limitation laws of the state.

Counsel for appellant undertakes to make a sound distinction between the business of a merchant tailor and the business the appellant company is engaged in. There is a difference in the amount of business they do and a difference in the manner of transacting it, but this is all. When a customer wishes to buy a suit of clothes from a merchant tailor he goes to his place of business, selects the style of goods he wants, the tailor takes his measure, and manufactures or makes—as you please—a suit of clothes for him out of the goods selected. When a man wishes to get a suit of clothes from the appellant company, in place of going to its business house, he goes to its agent, the country merchant, selects the kind of goods he wants, has the country merchant take his measure and send it to the appellant company, and it makes the suit of clothes as ordered. The merchant tailor probably has a dozen people employed in cutting and making clothes by hand and machine, while the appellant company claims to have sixty employes and a number of machines operated by electricity.

Under this state of facts if the appellant is entitled to the exemption it would be clearly an unjustifiable dis-

crimination to deny a like exemption to every merchant tailor in the city of Louisville, and if the merchant tailor in the city were granted the exemption, no good reason could be assigned for not exempting all the milliners, all the dressmakers, all the bakers, all the confectioners, all the shoemakers, all the carpenters, and all the cabinet makers who have places of business in the city, and all other persons who are engaged in converting articles from one form into another; and yet we think it apparent that the most ardent champion of giving this ordinance a liberal construction would not think of extending it to embrace merchant tailors, dressmakers, milliners and the like.

Without further extending this opinion in attempting to define who and who are not entitled to the exemption, we are well satisfied that the appellant company is not, and therefore the judgment is affirmed.