## City of Louisville, et al. v. Zinmeister & Sons.

(Decided June 18, 1920.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Division No. 2).

Municipal Corporations—Exemptions from Taxation.—Under section 4019A-10, Kentucky Statutes, one who imports raw coffee which at the time is wholly unfit for home consumption, and puts it through several processes of refinement in the city of Louisville, turning out a finished product, ready for the general market and for consumption, is a manufacturer within the meaning of said statute, and entitled to exemption from taxation on his manufacturing machinery and raw material at the place of manufacture.

WM. T. BASKETT and JOE S. LAWTON for appellants.

E. C. UNDERWOOD for appellees.

Opinion of the Court by Judge Sampson—Affirming.

One of the lines of business of J. Zinmeister & Sons of Louisville consists in the importation of green coffee which it prepares by putting it through several different processes, for use by the consumer. This company insists that it is a manufacturer of coffee products and consequently is entitled to exemption from taxation for

city purposes under section 4019a-10, Kentucky Statutes, on all machinery and products in course of manufacture and "raw material actually on hands" at its plant for the purpose of manufacture.

The city of Louisville and its assessor Baldauf, and tax receiver Watts, assert the coffee machinery as well as the raw material or green coffee imported by appellee, to be prepared for consumption, are subject to the city tax and were threatening to coerce Zinmeister & Sons to pay the taxes when that firm, in January last, instituted this action against the city of Louisville, its assessor and tax receiver to obtain an injunction restraining the city and its said officials from listing its said coffee machinery and raw material for taxation purposes in the city and from collecting or attempting to collect or levy any tax bill on said coffee machinery or raw material.

The petition avers that Zinmeister & Sons were on the first of September, 1918, engaged in the actual manufacture of coffee products at its plant in Louisville, Kentucky; that the plaintiff imports large quantities of green coffee which in its natural state is absolutely unfit for use for any purpose whatsoever; that said coffee so imported is manufactured by it into an article of commerce and an article of food or drink by and through certain processes employed by appellee which it recites as follows:

"The plaintiff first runs the green coffee through a separating machine which classifies or separates the coffee beans according to size, the larger beans being marketed at a higher level than the smaller beans.

"That after the separation process above referred to is completed, it is necessary to thoroughly cleanse all coffee thereby removing trash, pebbles, bag strings and other foreign substances which through the carelessness of the planters are scooped up along with the coffee from the ground when being sacked. That to accomplish this cleansing process the plaintiff runs the coffee through a machine known as a milling machine.

"That after said coffee has been separated or classified as aforesaid and after same has been cleansed by running through the milling machine, the plaintiff then carries said coffee, by means of automatic conveyers, to the roasting machines. That these machines are large, expensive and scientifically constructed machines

for roasting coffee which consist in part of revolving perforated cylinders containing contrivances which automatically turn and shift about the coffee therein contained, thereby enabling said coffee to be completely and uniformily roasted. That said cylinder must be operated by highly experienced employes in order to secure the even roasting of said coffee and in order that said coffee may be roasted to the proper extent, neither more nor less.

"That after said coffee is roasted, same leaves the cylinders at a tremendously high temperature and it is necessary that the temperature of said coffee be immediately reduced in order to prevent said coffee from burning or from continuing to roast after the proper degree of roasting has been attained; that to accomplish this purpose the plaintiff places said coffee in specially constructed contrivances for reducing the temperature of said coffee by means of passing currents of cold air through said coffee.

"That after said coffee has passed through the cleansing process it is necessary to and the plaintiff does put said coffee through a further cleansing process for which purpose the plaintiff uses specially constructed machinery which eliminates from the coffee all foreign substances whatever.

"That after the said process last mentioned is completed the plaintiff runs said coffee through a finished machine which polishes the coffee beans and thereby greatly improves its appearance and marketability.

"That after the polishing of the coffee bean as aforesaid the plaintiff places said coffee in certain scientifically constructed machines known as 'steel cutting mills;' that by means of said mills the coffee bean is not ground or crushed as was formerly the case in the handling of coffee, but, on the contrary, the said coffee beans are actually cut into small particles of uniform size. That in the old fashioned grinding of coffee there was a considerable waste in that it was difficult to obtain a uniform size of the ground coffee; that to be properly handled in the boiler the coffee should be neither too fine nor too coarse.

"That in the said process of steel cutting said coffee, by a specially constructed apparatus used in connection with said steel cutting machine the inside chaff or 'feather' of the coffee bean, together with any particles

of dust or other deleterious substance that may be concealed in the crevice of said coffee beans are entirely removed from said coffee beans; that the said chaff or feather is a deleterious substance and its removal improves both the quality and appearance of the finished produce.

"That after leaving said steel cutting mills, said coffee is packed by the plaintiff in specially prepared containers, the purpose of which is to prevent said coffee loosing its strength and aroma; that a large part of the packing of said coffee is done by machinery."

Section 4019a-10, Kentucky Statutes, provides in part as follows:

"All property subject to taxation for state purposes, . . . shall be subject also to taxation in the county, city, school or other taxing district in which same has a taxing situs, except the following classes of property which shall be subject to taxation for state purposes only. . . .

"(2) Machinery and products in course of manufacture of persons, firms or corporations actually engaged in manufacturing and their raw material actually on hand at their plant for the purpose of manufacture."

If Zinmeister & Sons are engaged in the manufacture of coffee products within the meaning of the statutes just quoted, then it is exempt from the tax which is sought to be enjoined, but if the process through which it puts the green coffee which it imports from South America does not amount to or come within the term "manufacture," then it is liable to the tax and the injunction must be dissolved.

The petition was amended and to it as amended defendants, City of Louisville, et al., filed demurrer which the court, after careful consideration, overruled and delivered an opinion sustaining the petition. The defendants then declined to plead further, and elected to stand upon their demurrer, whereupon the court entered a judgment granting the injunction against the city of Louisville and its said officials, restraining them and each of them from making out or certifying the tax bill and from collecting any taxes for city purposes for the year 1919 on any green coffee then in stock and all coffee machinery used by the plaintiff in the manufacture of its coffee products.

From this judgment the city and its said officials appeal.

It is the contention of the city that Zinmeister & Sons are not engaged in the manufacture of coffee and it asserts that coffee grows and is not manufactured— that you cannot make or manufacture coffee but can only grow it, and therefore, the appellee company is not engaged in the manufacture of coffee or coffee products, but only in putting the original product through certain processes for its refinement and improvement.

On the other hand Zinmeister & Sons contend that it is manufacturing coffee in the sense that the term "manufacture" is employed in the tax exemption statutes in that it takes a raw material, which is then absolutely unfit for use, and converts it into a finished article of commerce. It does this work at its factory in Louisville, employing a large force of helpers and using extensive and scientific machinery. The processes which appellee uses can not be performed at all by a small grocery or householder. These processes can be accomplished only by "specially constructed, scientific machinery and by skilled manipulation."

In the recent case of Lorillard Company versus Ross, Sheriff, 183 Ky. 217, we held that the word "manufacture" in the sense in which it is employed in the statute quoted above, does not import the means or methods employed, or the nature or number of processes resorted to, or the size of the factory or the number of hands it employs, or the volume of machinery in use, but the result accomplished, whether the article is manufactured or not. That was a tobacco case, and the Lorillard Company purchased large quantities of raw tobacco and gathered it in its warehouse or place of business in the city of Louisville for the purpose of regrading, stemming and redrying it. This plant is equipped with engines and other machinery and appliances used to stem and redry the tobacco. It was the contention of the Lorillard Company that it was manufacturing tobacco, but the facts of that case clearly showed that Lorillard & Company only gathered raw tobacco at its warehouse in Louisville for the purpose of regrading, stemming and redrying it before forwarding it to other factories where the tobacco was worked into a finished product ready for market and consumption by the public. We held that the tobacco and machinery in the warehouse were not at the plant for the purpose of manufacture in the sense in which the term "manu-

facture'' is used in the statutes under discussion, and that Lorillard & Company was liable for the tax. That was on the idea that only a part of the work necessary to turn out a finished product, ready for market and consumption, was taken by the Lorillard Company at its place in Louisville, its main manufacturing establishment being located somewhere in the east, to which this tobacco was carried after the few preliminary steps were taken at the Louisville house. The eastern manufacturing establishment of Lorillard & Company made the tobacco into plugs, twists, cigars, etc., but no such product was turned out by the Louisville house. We, therefore, held that as the Louisville plant did not produce a finished product, ready for consumption or for sale to the public in general, it was not a manufacturing plant within the terms of the statutes exempting such plant from city taxation. The Lorillard Company case followed the principles announced in the American Tobacco Company v. The City of Bowling Green, 181 Ky. 416.

The case at bar is very similar to the tobacco cases, except that Zinmeister & Sons imported the raw material and perfected it for sale in the open market and consumption by the public. It takes the raw coffee in its natural state, wholly unfit for consumption by the human family and so cleanses, purifies, dries, roasts and reduces it as to make it an article of food and drink, suited to the marts of trade.

If a concern which buys tobacco, cleanses, regrades and otherwise prepares it so as to make it an article of commerce, is a manufacturer, we can see no reason why a concern which imports green coffee and puts it through the several processes necessary to make it fit for human consumption is not also a ''manufacturer'' within the meaning of the statutes exempting manufacturers from taxation for city purposes.

We have held that a sawmill which converts logs into lumber is a manufacturing establishment. Bogart v. Tyler, Admr., 119 Ky. 637. And that a flouring mill is a manufacturing establishment. Hall & Sons v. Guthrie, 103 S. W. 721, 31 R. 801.

Whether a refining process applied to a given article is ''manufacture'' within the meaning of the statutes, section 4019a-10, depends upon the particular facts of the case. Courts have experienced much difficulty in de-

termining what is a manufacturing establishment and what is included in the term "manufacture." There is no hard and fast rule by which to determine whether a given establishment is a "manufactory," but all the facts and circumstances must be taken into consideration in determining whether the establishment is or is not to be so reckoned. Whether it is such an establishment does not depend upon the size of the plant, the number of men employed, the nature of the business or the article to be manufactured, but upon all these together and upon the result accomplished.

If raw material is converted at a factory or plant into a finished product, complete and ready for the final use for which it is intended, or so completed as that in the ordinary course of business of the concern it is ready to be put upon the open market for sale to any person wishing to buy it, the plant which turns it out is a manufacturing establishment within the meaning of the statutes, and we think the trial court correctly held the petition of appellee good and awarded the injunction prayed. Wherefore, the judgment is affirmed.

Judgment affirmed.