## City of Lexington v. Lexington Leader Company.

(Decided December 2, 1921.)

### Appeal from Fayette Circuit Court.

1. Manufactures—Determining Factor in Manufactures.—It is not the means or methods employed nor the nature or number of processes resorted to or the size of the factory or the number of hands it employs or the volume of the machinery in use, but the result accomplished that determines whether the article is manufactured or not.

2. Manufactures—Manufacture and Manufacturing Establishments. —The meaning of the words "manufacture" and "manufacturing establishment" has been adapted to meet the varying circumstances arising in the case or class of cases in which it was necessary to define them, so that the intent with which they were used might be accomplished. The purpose of the lawmaking body in using the word has always been allowed to have controlling weight in the decision of the meaning that should be attached to them.

3. Municipal Corporations—Exemption of Manufacturing Establishments.—Laws granting tax exemptions to manufacturing companies, because in derogation of common right, are not so favorably regarded by the courts as to justify an interpretation that would extend their meaning by mere implication. In other words, tax exemptions, like other cases of special privileges, are to be strictly construed.

4. Municipal Corporations—Manufactures—Exemption From Taxation.—Machinery and materials used in printing and in issuing a newspaper are not "products in course of manufacture," nor is the publisher "engaged in manufacturing" within the meaning of

exemption (2) of section 4019a-10, vol. 3, Kentucky Statutes, so as to exempt the property from municipal taxation.

JAMES A. WILMORE for appellant.

RICHARD C. STOLL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

By this action, filed by appellee and plaintiff below, Lexington Leader Company, a corporation, against the city of Lexington, plaintiff seeks exemption from municipal taxation upon its machinery, paper and other material used in publishing and issuing its newspaper in the city called The Lexington Leader, for the years 1917, 1918 and 1919. The right to the relief is claimed under exemption (2) of section 4019a-10, vol. 3, present Kentucky Statutes, which is a part of an act of the General Assembly passed at a special session on May 2, 1917. The section provides that all property subject to taxation for state purposes shall likewise be subject to local taxation "in the county, city, school or other taxing districts in which same has a taxable situs," except three named classes which shall be exempt from local taxation and subject to taxation for state purposes only. Exemption (2) from municipal taxation excludes "Machinery and products in course of manufacture of persons, firms or corporations actually engaged in manufacturing and their raw material actually on hand at their plants for the purpose of manufacture.

In an effort to give force to the contention that plaintiff is "engaged in manufacturing" and, therefore, entitled to the exemption within the contemplation of the statute, the petition goes into great detail in stating the various kinds of machinery employed in issuing the newspaper, and in explaining how the lead or type metal is melted and impressed with lettering through the manipulations of the linotype machine, and how the type or lettering so produced is transferred by stereotyping machines to mattrices from which are made metallic plates containing the words and sentences to appear in the newspaper. It is further explained how the metal plates are operated so as to stamp the printing upon the blank paper, and it is contended that these various manipulations, alterations and processes make the final product, the newspaper, a "manufactured" article and classifies plaintiff in issuing its newspaper as one "actually en-

gaged in manufacturing,'' so as to exempt it from taxation on any of its property or material thus employed. The city demurred to the petition, which the court overruled, and, it declining to plead further, judgment was rendered enjoining it from collecting any of the taxes involved for either of the years mentioned upon any of the property so employed, and complaining of that judgment it prosecutes this appeal.

It will at once be seen that the question is, whether a newspaper is such an article of manufacture as renders its publisher ''engaged in manufacturing,'' as contemplated by the exemption under consideration.   The words ''manufacture,'' ''manufacturing,'' ''manufacturing establishment,'' and co-related expressions, are extremely difficult, if not impossible, of exact legal definition.   Etymologically, according to Webster, the word ''manufacture'' means ''The process or operation of making wares or any material products by hand, by machinery, or by other agency; often, such process or operation carried on systematically with division of labor and with the use of machinery.   Anything made from raw materials by the hand, by machinery, or by art, as cloths, iron utensils, shoes, machinery, saddlery, etc.   A manufacturer; a factory.''   This definition, as will be seen, is general, and is broad enough to include every process or operation by which something is added to or taken from an article, which in its changed form is adapted to a different use and purpose than was the original article before any alterations were made.   It will thus be seen that but little advancement is made toward discovering a legal definition from the literary one given by Mr. Webster, which, after all, is no more satisfactory from a legal standpoint than is the lexicographical definitions of ''fraud,'' ''accident,'' ''conspiracy,'' and similar subjects with which the law has to deal.   It has, therefore, come to pass that courts, in determining the meaning of the words ''manufacture,'' ''manufacturing'' and ''manufacturing establishments,'' are largely governed by the circumstances surrounding the cases in which they are used, and by the intent and purpose of the legislature in enacting the particular statute wherein they are found, which results in construing the words as meaning one thing in a particular statute and entirely a different thing in another one, dependent, as indicated, upon the intention and purpose in enacting the statute and the end intended to be accomplished thereby.   Usually, that meaning will be

attached to them which corresponds with "the common understanding of mankind" in view of the subject matter in connection with which they are used. In other words, that interpretation is to be adopted which agrees with the popular sense in which they are used and understood, rather than according to their scientific meaning, and this is especially so in the construction of tax laws including exemptions therefrom. In Re Capital Publishing Co., 3 McArthur (D. C.) 405; State Evening Journal Ass., etc. v. State Board, 47 N. J. L. 36; Press Printing Co. v. State Board of Assessors, 51 N. J. L. 75; Dolese & S. Co. v. O'Connell, 257 Ill. 43; Williams v. Park, 72 N. H. 305; People Ex. Rel. New England Dressed Meat & Wool Co. v. Roberts, 155 N. Y. 408, 41 L. R. A. 228; State v. American Sugar Refining Co., 108 La. 603; Standard Tailoring Co. v. City of Louisville, 152 Ky. 504, and annotations to City of Louisville v. Zinsmeister & Sons, 188 Ky. 570, reported in 10 L. R. A. 1269, the annotations being on pages 1274-1276 inclusive.

In the Standard Tailoring Company case from this court, which was one wherein a tailoring establishment sought the same exemption from local taxation on the same grounds as here involved, but which was denied, the opinion, *inter alia,* says:

"The words 'manufacturing establishment' have been given a variety of meanings, depending largely on the circumstances surrounding the case in which they have been used. The result of this is that although the words have often been defined by the courts, few judicial precedents can be found that may be properly applied to any particular state of facts."

The opinion continues by giving the definition of Mr. Webster, *supra,* and then says:

"But in applying it to the facts of particular cases in which the construction of ordinances or statutes were involved, the courts, especially in license and exemption cases, have found it necessary in carrying out the legislative intent in the use of the word to materially limit the scope of this general definition, which is broad enough to embrace almost every concern that is engaged in the business of changing the nature or quality of articles so that they may be used for whatever purpose they were intended.

"Indeed we might say that the meaning of the words 'manufacture' and 'manufacturing establishment' has been adapted to meet the varying circumstances arising

in the case or class of cases in which it was necessary to define them, so that the intent with which they were used might be accomplished.   The purpose of the lawmaking body in using the word has always been allowed to have controlling weight in the decision of the meaning that should be attached to them, as may be seen by an examination of the number of cases cited in 'Words and Phrases,' vol. 5, title 'Manufacture.' ''

Following these rules, courts are more inclined to attach a broader meaning to the terms ''manufacture'' and ''manufacturing establishment'' in mechanics' lien laws, (an example of which is the case of Bogard v. Tyler, 119 Ky. 637), workmen's compensation acts, and other similar statutes wherein they are used, in order to effectuate the sound public policy embodied therein, and presumed beneficent purposes of such statutes; while in tax exemption statutes a more restricted definition will be adhered to, since they are to be strictly construed.   Notes to City of Louisville v. Zinsmeister & Sons, *supra*, in 10 A. L. R. 1274; City of Middlesboro v. New Southern Brewing & Ice Co., 108 Ky. 351; Jones Bros. v. City of Louisville, 142 Ky. 759; Louisville & Nashville Railroad Co. v. City of Louisville, 143 Ky. 258; Victor Cotton Oil Co. v. City of Louisville, 149 Ky. 149, and Standard Tailoring Co. v. City of Louisville, *supra*, which is also reported in 44 L. R. A. (N. S.) 303, and Ann. Cas. 1915B, 220.

The cases cited adopt and reiterate the rule substantially the same as it is stated in annotations in 10 A. L. R. 1274, thus:   ''Laws granting tax exemptions to manufacturing companies, because in derogation of common right, are not so favorably regarded by the courts as to justify an interpretation that would extend their meaning by mere implication.   In other words, tax exemptions, like other cases of special privileges, are to be strictly construed.''   That statement of the rule is supported by a reference to the Kentucky cases, *supra*, and many from other states.   So that the rule with reference to the interpretation of tax exemption statutes is thoroughly embedded in the jurisprudence of this country.

Plaintiff, from the detailed allegations in its petition, as well as from argument made in brief of its counsel, stresses the somewhat complicated method by which the printing of the paper is completed, as well as the different machinery and material used in the process, as facts supporting the theory that the ultimate production (the newspaper) is such a manufactured article as entitles

plaintiff to the exemption sought, while at the same time it is at least inferentially conceded that the publication of a paper by the old method of setting type, and with the hand press, formerly in vogue, (and now employed in some localities) would not make the publisher "engaged in manufacturing" so as to entitle him to the statutory exemption. But, we are unable to recognize any such distinction, for, as said by this court in the case of P. Lorillard Co. v. Ross, 182 Ky. 217: "It is not the means or methods employed or the number or nature of the processes resorted to, but the result accomplished that determines whether the article is manufactured or not. Nor is the question of exemption from or liability to taxation to be determined by the size of the factory or the number of hands it employs or the volume of machinery in use. It is wholly immaterial whether the factory is a small one or a large one or whether the processes to which it subjects the raw material are performed by hand or by machinery." Besides, to allow the distinction would violate the definition of the word "manufacture" as given by Mr. Webster, *supra,* when he says: "Anything made from raw material by the hand, by machinery, or by art," etc. Moreover, the distinction is unfounded in reason, logic or equity. It would exempt from taxation the property of a publisher who was financially able to equip himself with the modern facilitating machinery for the purpose, while it would mulct another publisher without sufficient means to acquire such equipment by increasing his burdens at the expense of relieving entirely from the payment of taxes his more opulent competitor. And this brings us to say, in accordance with the doctrine of all the cases, that it is not the number of processes or the various kinds of treatment through which the alleged manufactured article is subjected that determines the question, but rather the character and kind of article that is produced, after being so subjected, is the decisive fact.

Guided by the above fundamental rules we come to a decision of the concrete question before us, which is, whether a newspaper is an article of manufacture, and whether its publisher is "engaged in manufacturing" within the meaning and contemplation of exemption (2), *supra,* of our statute. Lexicographically, as we have seen, most any alteration of a given piece of material by adding to or subtracting from it, or changing its shape so as to be adapted to a different use, would constitute

"manufacturing." But, evidently it was not the intention and purpose of the legislature in exempting such articles from taxation to adopt that broad definition, for if so, it would relieve from the burdens of local government a large per cent of property which the legislature never intended to exempt. The peanut roaster, the vendor of pop corn, the mixer of prescriptions, the baker, the tailor, the carpenter, the stonecutter, and a vast number of others who might be mentioned could claim their exemptions if the literal definition of the term should be applied; and to prevent such literalism courts have announced the rule, *supra*, that "the common understanding of mankind" shall be looked to in construing such statutes, the interpretation of which is largely governed by the facts and circumstances of each particular case.

The produced article in this case, *i. e.*, the newspaper, has about as little differentiating features from the raw material, which it is claimed were given to it by the process of manufacturing, as any other conceivably manufactured article. In fact practically all that is done to the "raw material" is to impress something upon it so as to render it a conveyor of intelligence to those who can read, whereas beforehand it was blank. Intrinsically the clean, blank paper is rendered less vluable by the process and there was no more art or machinery employed to accomplish the result than in manufacturing ice cream, operating a bakery on a large scale, or, as said in some of the cases, in conducting a culinary department for a large metropolitan hotel. We held in the case of Muir v. Samuels, 110 Ky. 605, that a steam laundry was not a "manufacturing establishment" within the meaning of section 2487 of the statutes, which is a part of the mechanics' lien law of the Commonwealth, and in the opinion said: "The only business of a laundry is to transform soiled into clean linen. It is true that this is done largely by means of machinery, and requires the use of an engine and boilers, and other appliances ordinarily used in manufacturing establishments; but, after all, nothing new is produced." Cases are then cited holding that cutting ice on a pond and storing it in a building for future use is not manufacturing; and that an ice cream confectioner is not engaged in manufacturing within the meaning of the law exempting manufacturing establishments from taxation. The Muir case and the one we have here are not without their points of resemblance. In the one, soil is removed and the finished product made clean and

fit for use, while in the other a clean article is soiled and the finished product also made useful; in the one, something is subtracted while in the other something is added to the supposed "raw material." In each case the finished product is adapted to a different use, and in the laundry case the use of the "raw material" (the soiled garment) is enjoined, since we are admonished that 'Cleanliness is, indeed, next to Godliness.' "

The purpose of the legislature in providing for the exemption under consideration, as said in the Lorillard case, *supra*, "was to encourage the location in this state of manufacturing plants at which everything that was necessary to convert the raw material into a finished product for sale on the markets should be done at the factory or plant in this state where the raw material was on hand; and this legislative purpose should not be lost sight of in the construction of this statute," (the same one that we have here). It could scarcely be "the common understanding of mankind" that the legislature in enacting the statute had in view the inviting of newspaper publications, since the locations for such purposes are generally influenced by local surroundings, circumstances and conditions apart from questions of taxation.

But we are not without direct authority upon the proposition. In the Capital Publishing Company case, *supra*, the Supreme Court of the District of Columbia had before it the construction of the word "manufacture" as used in the bankrupt law, and in disposing of the question the court said: "The publisher of a newspaper is not, in a legal sense, a manufacturer. . . . No definition of the word 'manufacturer' has ever included the publisher of a newspaper, and the common understanding of mankind excludes it. . . . It (the publishing plant) gives employment to printing presses, types and editors, and yet in the whole history of newspapers from the close of the seventeenth century, this word 'manufacture' has never been applied to them, or appropriated by them in the whole range of English literature."

In the State Evening Journal Association case, the New Jersey court, in determining that a corporation engaged in publishing a newspaper was not a "manufacturing company" so as to exempt it from certain taxation, said: "We agree with the reasoning and the conclusion that the publisher of a newspaper is not, in a legal sense, a manufacturer. . . . A newspaper has intrinsically no value above that of the unprinted sheet. Indeed, it

has less value, considered intrinsically, as a mere article of merchandise. Its value to its subscribers arises from the information it contains, and its profit to the publisher is derived, in a great measure, from the advertising patronage it obtains by reason of the circulation of the paper, induced by the enterprise and ability with which it is conducted. Neither in the nature of things, nor in the ordinary signification of language, would a newspaper be called a manufactured article or its publisher a manufacturer.'' The same conclusion was reached by the same court in the Press Printing Company case, *supra.*

In the case of Oswald v. St. Paul Globe Publishing Company, 60 Minn. 82, the Supreme Court of that state had before it the question whether the stockholders in a corporation, organized for the purpose and engaged in publishing a newspaper, were liable under the ''double liability clause'' of a statute of the state to the creditors of the corporation where the statute did not include stockholders of a ''manufacturing corporation.'' In holding that the publishing company was not a manufacturing corporation within the meaning of the statute, the court said: ''The business of publishing an ordinary daily or weekly newspaper is at most only partly a manufacturing business, and that part is merely incidental to the main or principal part of the business, which is collecting and selling news, preparing and selling literary work, and other editorial work. Even the advertising department of such a newspaper cannot be considered merely as the printing and distribution of advertisements handed in by advertisers, so as to amount in itself to a merely mechanical or manufacturing business. The advertiser buys the use of the news and the literary and editorial work as a vehicle on which to convey his advertisements into the hands and to the notice of the readers of the paper, and he pays much more for such use of the news and literary and editorial work than he does for the mere mechanical work of printing and distributing his advertisements. This view of the nature of the business of publishing a newspaper is sustained by the following cases;'' then follows some of the cases hereinbefore referred to.

The only case to the contrary, which we have been able to find, is that of the State of Louisiana v. Dupre, et al., 42 La. Ann. 561, in which a majority of the members of the court held that the publisher of a newspaper was a manufacturer within the meaning of the statute exempt-

ing from license taxes manufacturers other than those of distilled, alcoholic or malt liquors, tobacco and cigars and cotton seed oil; but, two members of the court dissented from that opinion, and we do not find that it has been followed by any other court.

We are, therefore, forced to the conclusion that, under the facts alleged in the petition, plaintiff does not come within the purview of the exempting clause of our statute, and was not entitled to relief thereunder as a manufacturer of its newspaper. It may be true, as gathered from occasional whisperings, that in the estimation of some evil minded persons a newspaper may be a manufacturer of some of the matter it prints, which, according to the slander, is "made out of whole cloth," but we disavow membership in such bands of traducers, and observe that, even if their accusations are true, the manufactured article would not be one which the legislature intended to encourage or foster by creating the exemption.

It results, therefore, that the court erred in rendering the judgment appealed from and it is reversed with directions to set it aside and sustain the demurrer to the petition and for proceedings consistent with this opinion.