## City of Louisville et al. v. Ewing Von-Allmen Dairy Co.

(Decided May 18, 1937.)

J. WARD LEHIGH for appellants.

EDWARD P. HUMPHREY and MARVIN H. TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

The sole question involved on this appeal is was the machinery owned and used by appellee in pasteurizing milk in its natural state, subject to municipal assessment and taxation, within the meaning and intent of section 4019a-10, Kentucky Statutes?

The record shows that the machinery of appellee used in the pasteurization process was, by mistake, as appellee alleged in its petition, assessed with the proper

officials of the city for $63,862, which is now claimed to be exempt from taxation for municipal purposes.

Appellee in its petition, in addition to other necessary and proper allegations, alleged, in substance, that it was the owner of machinery with which it pasteurized raw milk and states the process used by it as follows:

"Upon receipt of raw milk at said plant it is tested for butter fat and other solid content; it is then inspected for flavor and condition and sampled for chemical content, after which it is weighed and emptied into special receiving equipment adapted for such purpose; from these containers or receiving vats it is pumped into large storage tanks where it is blended and standardized to conform to the particular grade and standard of milk which the dealer is selling. These tanks are pieces of equipment made of stainless steel, insulated and jacketed so that proper refrigerants can pass around the outside and the milk thereby kept in good condition. All equipment used in handling milk is of heavy type because of the nature of the product, and is made out of stainless material or solid copper plated with tin. From these blending tanks milk is pumped through a regenerating process, where through delicate electrical instruments the proper temperature is raised and maintained for the purpose of pasteurization, which kills all types of pathogenic organisms and also to a certain extent changes the flavor of the milk. The pasteurization process must be confined to a very slight variance in temperature, and consists of heating milk to 142 degrees Fahrenheit and then holding it at this temperature for thirty minutes, at the expiration of which time the milk must be immediately chilled to 38 degrees Fahrenheit before it can be further handled. After leaving the pasteurization equipment it goes through a process of filteration to surge tanks and then to the packaging department.

"The milk is then bottled under vacuum and caps are automatically sealed on bottles that have been sterilized just prior to reception of milk. All of this process involves a very intricate operation by automatic machinery. The milk which is finally

sold to the consuming public is entirely different from the raw milk which comes into the plant. The plaintiff states that the machinery thus used by it is machinery used in manufacturing and was so used at all times involved herein.''

A demurrer was interposed to the petition by appellants. It was overruled. Appellants declined to plead further, but chose to stand on the demurrer. The court then adjudged that the machinery used in the process of pasteurizing milk was exempt from assessment and taxation by the City of Louisville; and further adjudged that the temporary injunction, that had heretofore been granted, be made permanent, that each of the defendants were permanently enjoined from enforcing the assessment or collecting taxes against appellee, Ewing Von-Allmen Dairy Company, for municipal purposes of the City of Louisville. Each of the defendants were restrained from selling or offering for sale any of the property of the company for the purpose of collecting the taxes in any manner. From that judgment, this appeal is prosecuted.

Section 4019a-10, Kentucky Statutes, provides:

''All property subject to taxation for state purposes shall be subject also to taxation in the county, city, school, or other taxing district in which same has a taxable situs, except the following classes of property which shall be subject to taxation for state purposes only: * * * Machinery and products in course of manufacture, of persons, firms or corporations, actually engaged in manufacturing, and their raw material actually on hand at their plants for the purpose of manufacture and unmanufactured agricultural products in the hands of the producer or in the hands of any agent or agency of the producer to which said products have been conveyed or assigned for the purpose of sale by the producer.''

Under the provisions of that statute, is appellee engaged in manufacturing? If not, then the machinery used by it in the process of pasteurizing milk is not exempt from assessment and taxation.

We have often ruled that the word ''manufacture,'' as used in the statute, supra, is not susceptible of accurate definition; or of a definition that is all-embracing

or all-exclusive. Commonwealth, for Use of Rockcastle County, v. W. J. Sparks Co., 222 Ky. 606, 1 S. W. (2d) 1050.

We have said also that as accurate a definition as can be given is: "To work, as raw or partly wrought materials, into suitable forms for use." Webster's New International Dictionary.

We have again said, in Hughes & Co. v. City of Lexington, 211 Ky. 596, 277 S. W. 981, 982:

"That the definition of the term is a question of law and for the courts is plain, but the courts are practically agreed that it is incapable of exact definition, and that there is no hard and fast rule which can be applied, but that each case must turn upon its own facts, having regard for the sense in which the term is used and the purpose to be accomplished. City of Louisville v. Zinmeister & Sons, 188 Ky. 570, 222 S. W. 958, 10 A. L. R. 1269; Standard Tailoring Co. v. City of Louisville, 152 Ky. 504, 153 S. W. 764, 44 L. R. A. (N. S.) 303, Ann. Cas. 1915B, 220; City of Lexington v. Lexington Leader Co., 193 Ky. 107, 235 S. W. 31; City of Henderson v. Geo. Delker Co., 193 Ky. 248, 235 S. W. 732; 38 C. J. 972."

We have also said, in City of Louisville v. Zinmeister & Sons, supra:

"If raw material is converted at a factory or plant into a finished product, complete and ready for the final use for which it is intended, or so completed as that in the ordinary course of business of the concern it is ready to be put upon the open market for sale to any person wishing to buy it, the plant which turns it out is a manufacturing establishment within the meaning of the Statutes."

With these rules before us, is appellee engaged in the manufacturing of milk? We think not, because the process used means nothing more than the removing of all impurities from raw milk; because all raw milk may contain various kinds of impurities coming from an unclean condition of the cow's udder or from the person doing the milking or otherwise of the cow. The old-fashioned way was using the strainer; in fact, such instruments are used now by the ordinary housewife.

Still, from a healthy cow, milked by a careful person and properly strained, the milk would need no further cleansing. It is not only palatable, but nourishing and healthful. However, in later years, especially in cities and closely populated communities, it has been thought wise and proper to purify milk by machinery. We call it "pasteurizing the milk," which means nothing more or less than to remove from the raw material all germs, bacteria, and other foreign substances that might be in it. However, when the process is complete, we have nothing left but milk, the same article and raw material that comes fresh from a healthy cow by the hands of a careful and clean milker, after it had been properly strained and prepared for use by a first-class, clean and tidy housewife. The milk, after the pasteurization is complete, contains the same ingredients as it had in it when it came from the cow. It is only made clean food to be used. It has lost none of its palatable taste as when it came from a healthy cow. Still, it contains all of the ingredients that it formerly had.

Counsel for appellee calls our attention to the case of City of Louisville v. Zinmeister & Sons, supra, and to other cases, insisting that those cases are decisive of the question now before us. In the Zinmeister Case, we decided that the machinery used in the manufacture of green coffee was exempt from municipal taxation. We do not think the facts in that case are the same as in the instant case. Zinmeister & Sons were engaged in taking green coffee, a raw material, which was unfit for use in that condition, and by its machinery converting it into a useful purpose and into a finished article of commerce. In the case of Hughes & Co. v. City of Lexington, supra, relied on by counsel, cream was separated from the milk, pasteurized, flavored, matured, and frozen, producing in the completion of the process a new and different article useful for commerce, containing a different flavor and used for another commercial purpose entirely different from the whole or raw milk. In the case of Commonwealth, for Use of Rockcastle County, v. W. J. Sparks Co., supra, it was decided that manufacturing, which gives new shapes, new qualities, and new combinations to matter, which has already gone through some artificial process, the machinery in that process was exempt. City of New Orleans v. LeBlanc, 34 La. Ann. 596; Hall & Son v.

Guthrie's Sons, 103 S. W. 721, 31 Ky. Law Rep. 801. In the Sparks Case, the company took the rock that was blasted from the quarry, broke it into sizes convenient for delivery, and into pieces small enough to be placed in a crusher. It was then crushed and assorted in different sizes, some of which were ordinary stones, while others were macadam chips. In that case, when the rock was first blasted, it was not suitable for use. It could not have been used in building roads in its condition; therefore, in that case it was decided that the process used was for the purpose of shaping and sizing the rock and converting it into an article suitable for the building of roads. The facts in the three cases, supra, are altogether different from the facts in the instant case. In this case the milk remains milk from the time it is received from the milkman by appellee until it is purified by the process of pasteurization. There has been no manufacturing whatever. It is used entirely for the same purpose that it was used for in the beginning.

Counsel for appellants rely on the case of People of State of New York ex rel. Empire State Dairy Co. v. Wm. Sohmer, Comptroller of State of New York, 218 N. Y. 199, 112 N. E. 755, L. R. A. 1917A, 48. That was a case involving the same question as here—the pasteurizing of milk. The court in that case decided that the machinery necessary for the pasteurization of the milk was not exempt from taxation. Counsel for appellee insist that the New York Case, supra, is not authority for the reason that the same court decided at another time that the machinery used in the manufacture of coffee by taking the green coffee, roasting it, etc., practically the same process as in the Zinmeister Case, was exempt from taxation and for that reason was not an authority in the instant case. However, as the facts in that case are exactly the same as in the instant case, we are of the opinion that the conclusion reached in the New York Case is correct, and, by accepting the New York Case as authority, we do not in any way come in conflict with the Zinmeister, the Hughes, or the Sparks Cases, or any other opinion rendered by this court, because the facts in those cases are altogether different from the facts in this case.

Counsel for appellants refer us to the case of Anheuser-Busch Brewing Ass'n v. United States, 207

U. S. 556, 28 S. Ct. 204, 206, 52 L. Ed. 336, that we consider definite authority supporting the conclusions that we have reached. In that case corks used for bottles shipped from Spain to the United States, were, after their importation, subject to a special treatment. These corks were put into a machine or air fan; were thoroughly cleansed by washing and steaming, removing all germs that might be in the corks and making them soft and elastic. They were then exposed to blasts of air in a machine until they were absolutely dry. They were then given a bath of glycerine and alcohol and then dried by a special system. By this treatment, all seams, holes, and crevices in the corks were closed and it gave the corks a coating, which, when placed in beer bottles, prevented the beer from acquiring a cork taste. The corks were then dried by absorption of the chemicals that had covered them. The whole process took two or three days to complete it. In fact, the corks were steamed and pasteurized in such a way that all germs were destroyed and the corks were made ready for use. It was claimed that that process was in effect a manufacture of the corks, but the court said:

"Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary, as set forth and illustrated in Hartranft v. Wiegmann, 121 U. S. 609, 7 S. Ct. 1240, 30 L. Ed. 1012. There must be transformation; a new and different article must emerge, 'having a distinctive name, character, or use.' * * * A cork put through the claimant's process is still a cork."

Therefore, it is our conclusion that the milk put through the process of pasteurization is still milk. We are of the opinion that the court committed an error in overruling appellants' demurrer to appellee's petition, and permanently enjoining the plaintiffs from assessing and collecting the tax on the machinery referred to.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.