**DEPARTMENT OF REVENUE ex rel. J. E. LUCKETT et al., Appellants,**

v.

**ALLIED DRUM SERVICE, INC., Appellee.**

Court of Appeals of Kentucky.

Feb. 18, 1977.

Discretionary Review Granted June 8, 1977.

William S. Riley, Asst. Atty. Gen., William P. Sturm, Atty., Legal Staff Dept. of Revenue, Frankfort, for appellants.

Irwin G. Waterman, Louisville, for appellee.

Before GANT, HOWERTON and REYNOLDS, JJ.

GANT, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court overruling an order of the Kentucky Board of Tax Appeals which affirmed a ruling of the Kentucky Department of Revenue assessing additional sales and use taxes against the Appellee, Allied Drum Service, Inc. The issue is whether Allied Drum Service, Inc. is entitled to an exemption under Ky.Rev.Stat. 139.480(8) from imposition of the sales tax with respect to the purchase of new machinery for use in its plant.

Prior to December, 1960, the Allied Drum Service, Inc. operated a metal drum servicing plant which was almost entirely a manual operation. In December, 1960, the company acquired some buildings for use as its metal drum servicing plant and installed modern machinery to aid in the servicing of the drums.

In the fall of 1962 the company began installing a series of new machines which were to be used in a separate operation from that mentioned above. The controversy before this Court concerns the sales tax assessment on the purchase price of this machinery.

The following is a brief description of the process utilized in preparing the drums for use. The drum is reduced in height by slicing the top of the drum and all paint and any contents remaining from the previous use of the drum are removed by incineration. The incombustibles are removed by a shot blast operation which returns the metal to its original state. After the drum is reshaped by rolling, the open end is finished either by:

(1) placing the drum on a flanging machine which puts a bevel on the cut edge, creating a shoulder on which a new head is fitted. The drum is then placed on a double seamer, sealing it into a liquid tight container which is mechanically tested by air pressure for leaks. Drums completing this process are used for the shipment of liquids.

(2) running the cuthead of the drum through a beating machine which rolls the cut edge, converting the drum from a tight head to an open end drum. A lid and separate locking ring device are added. These drums are designed to be used for the shipment of solids or semi-solids.

The final step consists of painting the drum and coating its interior with various protective liners according to the customer's specifications.

Ky.Rev.Stat. 139.480 provides for property exemptions to the Sales and Use Tax and provides in pertinent part as follows:

"Any other provision of this Chapter to the contrary notwithstanding, the terms "sale at retail," "retail sale," "use," "storage," and "consumption," as used in this chapter do not include the sale, use, storage or other consumption of:

\* \* \* \* \* \*

(8) Machinery for new and expanded industry;

\* \* \*"

"Machinery for new and expanded industry" is defined in Ky.Rev.Stat. 139.170 as being ". . . machinery used directly in the manufacturing process, which is incorporated for the first time into plant facilities established in this state, and which does not replace machinery in such plants."

Therefore, the sole issue on appeal is whether the Appellee is engaged in a "manufacturing process."

The former Court of Appeals of Kentucky has on several occasions determined whether a certain operation constituted "manufacturing." The following have been held to be "manufacturing": (1) Production of railroad rolling stock at railroad machine shops; (2) Cutting up junk metal into commercial scrap; (3) Production of crushed rock for use as road material; (4) The generation of electricity; (5) Production of ice cream; (6) Assembling of buggies from ready-made parts, accompanied by some original structural work; (7) Sorting, cleansing, roasting, polishing and cutting of green coffee; and (8) Bottling of whiskey.

These processes have been held not to constitute "manufacturing": (1) Pasteurization of milk; (2) Sorting, classifying, stemming and curing of tobacco; (3) Filtering of water; (4) Television broadcasting; (5) Laundering, and (6) Cooking, mechanized crushing, screening and washing coal for the purpose of removing impurities.

In so holding, the Court of Appeals formulated several tests to aid in defining "manufacturing." They include:

(1) The application of labor or skill by hand or machinery to material, so that as a result thereof a new, different and useful article of commerce is produced. *Hughes & Co. v. The City of Lexington*, 211 Ky. 596, 277 S.W. 981 (1925).

(2) To work, as raw or partly wrought material, into suitable forms for use. *Commonwealth v. W. J. Sparks Co.*, 222 Ky. 606, 1 S.W.2d 1050 (1928).

(3) A process which takes something practically unsuitable for any common use and changes it so as to adapt it to such common use. *City of Louisville v. Howard*, 306 Ky. 687, 208 S.W.2d 522 (1947).

(4) A process whereby a transformation must occur and a new and different article must emerge having a distinctive name, character or use. *City of Louisville v. Ewing Von-Allmen*

*Dairy Co.*, 268 Ky. 652, 105 S.W.2d 801 (1937).

(5) A change from the original material to a new and different article. *American Tobacco Co. v. City of Bowling Green*, 181 Ky. 416, 205 S.W. 570 (1918).

(6) That meaning which corresponds with the common understanding of mankind. *City of Lexington v. Lexington Leader Co.*, 193 Ky. 107, 235 S.W. 31 (1921).

(7) A consideration of all the facts and circumstances surrounding the operation, including the size of the plant, the number of men employed, the nature of the business or the article to be manufactured. *City of Louisville v. J. Zinmeister & Son*, 188 Ky. 570, 222 S.W. 958 (1920), and this test was tempered in *Commonwealth ex rel. Luckett v. WLEX–TV, Inc.*, Ky., 438 S.W.2d 520 (1969), when the court stated that "It is not the number of processes or the various kinds of treatment through which the alleged manufactured article is subjected that determines the question, but rather the character and kind of article that is produced, after being so subjected, is the decisive fact."

The variance in the above-mentioned standards shows that the court formulated a definition to meet the facts of the case before them. This view was acknowledged in *Burke v. Stitzel-Weller Distillery*, 284 Ky. 676, 145 S.W.2d 861 (1940) when the court stated:

"The meaning of the word 'manufacture' as used in the statute, *supra*, may vary according to the facts and circumstances of each particular case. This court has often held that the word 'manufacture' as used in the statute is not susceptible of accurate definition or of a definition that is all-embracing or all-exclusive . . . and that there is no hard and fast rule which can be applied, but that each case must turn upon its own facts, having regard for the sense in which the term is

used and the purpose to be accomplished."

Therefore, the definitions set out above are merely guidelines and are not determinative of whether an operation is a "manufacturing process."

Appellant urges that the Appellee does not produce a new article but begins with the used drum and ends with the used drum. For this contention, he cites the cases involving the purification of water, the pasteurization of milk and the separation of impurities from coal. However, this is an invalid analogy. In the case at bar, there is some physical change in the form of the article *itself* whereas in the cases cited by the Appellant there is a mere separation of unwanted materials from the article. Appellee actually changes the physical aspects of the drum by reshaping, rerounding, sometimes shortening and adding a top to the steel drums. This is not a case of taking a used drum and ending up with a used drum but is one where the Appellee takes a virtually unusable and non-marketable damaged drum and converts it into a serviceable and marketable commodity.

The case of *David J. Joseph Co. v. City of Ashland,* 223 Ky. 203, 3 S.W.2d 218 (1928) is analogous to the situation at bar. In *Joseph* the Court of Appeals held that the shears, electric torches, and other machinery and mechanical appliances used in a scrap yard to change the form and dimensions of metals by cutting them into smaller pieces of relatively uniform size and shape so as to convert them into commercial scrap was manufacturing machinery. Of course one could argue that prior to the treatment by the dealer the metals were scrap and immediately thereafter they were scrap. But the essence of the opinion is that the dealer transformed a non-marketable item into a marketable one. Furthermore, this Court has held that a "manufactured article" does not have to be made out of crude material in its natural state. *City of Henderson v. George Delker Co.,* 193 Ky. 248, 235 S.W. 732 (1921).

This Court agrees with the Appellant's contention that every change or conversion of material from one form to another is not manufacturing. *Standard Tailoring Co. v. City of Louisville,* 152 Ky. 504, 153 S.W. 764 (1913). A guideline for determining which changes are manufacturing was set forth in *Commonwealth ex rel. J. E. Luckett v. WLEX–TV, Inc., supra,* which stated:

"One of the important circumstances in construing the word 'manufacturing' as used in a tax-exemption statute is the apparent objective of the legislature in enacting it. * * * The ultimate purpose of the exemption is to enhance a competitive position of this state as against other states in encouraging the location and expansion of the industries whose 'manufacturing' processes require volume employment of people."

Appellee purchased the machinery in question for a new and additional facility necessitated by the expansion of Allied Drum Service's activities. Prior to the expansion, the work was almost entirely a manual operation and the total employment of Allied reached about 70 to 80 employees in its plant. We believe the Appellee's expansion was of the type envisioned by our Legislature.

Appellant urges that the Appellee repairs and reconditions, rather than manufactures, the steel drums. In a case strikingly similar, *Eastern Machinery Co. v. Peck,* 160 Ohio St. 144, 114 N.E.2d 55 (1953), the Ohio Supreme Court differentiated between "manufacture" and "repair." Eastern was engaged in the business of purchasing used but unusable machine tools, rebuilding or reconditioning them for service by supplying needed parts, and reselling them to the trade generally. Some of the tools were comparatively new, others were very old, and virtually all were unusable when purchased. Ohio had a statute defining a manufacturer as "A person who purchases, receives or holds personal property * * * for the purpose of adding to the value thereof by manufacturing * * * or by the combination of different materials with a view of making a gain or profit by so doing * * *." However, the logic in *Eastern* is applicable to the case at bar.

The Ohio court, citing *Clawson and Bals, Inc. v. Harrison,* 108 F.2d 991 (7th Cir. 1939), stated as follows:

"The situation here seems to be much like the situation in the worn-out tire case. These worn-out connecting rods undoubtedly look like connecting rods, and one can recognize that they have been connecting rods, just as one can by looking at a worn-out tire recognize the fact that it has been a tire. But in each case, the articles are worn out. A manufacturing process is, in the opinion of the court, required to make a serviceable product; and in the case of the connecting rod, the plaintiff carries on that manufacturing process.

\* \* \* \* \* \*

'There is obvious difficulty in treating the taxpayer as a repairer in view of the normal concept of the relation of a repairer to the repaired article. Ordinarily, the repairer furnishes labor and material to the owner of some article for the purpose of restoring the article to its normal condition. The article remains the property of the one for whom the service is performed. If this taxpayer is a repairer, it is a repairer of its own property, not for the purpose of restoring its own property for efficient use in the ordinary operations of the taxpayer's business, but for the purpose of preparing the property for sale in the trade. In the transactions between the taxpayer and its vendees the connecting rods, whether prepared from new forgings or from old connecting rods, are treated as newly and freshly produced automobile accessories. Neither taxpayer nor the trade recognizes that the finished connecting rods are repaired rods. Looked at from the standpoint of production and distribution in the trade the taxpayer is performing the function of a manufacturer rather than a repairer. The taxpayer is producing connecting rods for the trade in a very true sense and not repairing old connecting rods for owners or users.' "

In the same case, the Ohio court, citing *Broad Motors Co. v. Smith,* 86 F.Supp. 4 (E.D.Penn.1949), stated that "The 'used' parts utilized by the taxpayer had lost their identities as such parts for commercial, as well as for practical usage purposes. \* \* It was necessary to remake them into useful articles so as to enter into the flow of commerce \* \* \* The rebuilt motor was a new article, something entirely different from the worn-out motor turned in, and made up of component parts which, because of the machining and cleaning done on them, were different from the used parts salvaged from the turned-in motors." In the case at bar, the Appellee purchases damaged drums with the intent of selling them to the trade at large. The "remanufactured" steel drums are treated by Appellee's customers as "newly and freshly produced" articles of commerce sufficient to perform the function required. Therefore, this Court is of the opinion that the Appellee manufactures rather than repairs the steel drums.

Appellant, in his reply brief, maintains that the Appellate Court should affirm the Board of Tax Appeals decision since the findings of an administrative tribunal, upon review by court, may not be disturbed if such findings are supported by substantial evidence. A basic premise necessary to Appellant's contention is that the definition of the term "manufacturing process" is an issue of fact rather than law. In *Burke v. Stitzel-Weller Distillery, supra,* this Court held that ". . . the definition of the term (manufacture) is a question of law and for the courts is plain . . ." Therefore, this Court is not bound by the decision of the Ky. Board of Tax Appeals.

For the above stated reasons, the judgment is affirmed.

ALL CONCUR.