**WORKINGMEN'S OVERALL SUPPLY COMPANY, Appellant, v. GLANDER, Tax Commr., Appellee.**

Board of Tax Appeals.

Nos. 15600, 15601. Decided January 4, 1950.

Sidney Rigelhaupt, Youngstown, for appellant.
Herbert S. Duffy, Atty. Genl., W. H. Annat, Asst. Atty. Genl., Columbus, for appellee.

## OPINION

This is a consolidated appeal from orders made by the Tax Commissioners on December 23, 1948, wherein that official denied applications for a review and redetermination of the taxpayer's classification and adhered to the valuation of appellant's inventories theretofore made for the tax years 1945, 1946 and 1947. The matters are submitted upon the transcript, notices of appeal, the record made at a hearing had before an attorney examiner of this Board and briefs of counsel.

Appellant is engaged in the business of furnishing industrial plants and business enterprises with coveralls, coats, pants, shirts, smocks, fender covers and industrial towels. It describes its business as that of selling service to its custo-

mers upon contract. It purchases its wearing apparel ready made and alters it to fit its customers' employees. It adds thereto its customers' color scheme, emblems and the employee's name. Two qualities of these garments are purchased where necessary—one for winter, the other for summer wear. Each employee has three garments which are cleaned and laundered about every ten days. The average life of these garments is said to be 12 to 14 cleanings or 6 to 8 months otherwise stated. It is evidenced that these garments are not interchangeable between employees of the same customer or those of other customers and that if an employee leaves service his garments are scrapped.

The major portion of the taxpayer's business is the supplying of industrial towels, material for which is brought in two sizes. This material as purchased is not useable. It is put through a process which removes grit, lint, chemical and abrasive substances and makes it absorbent. Towels average about 9.6 cleanings or have an average life of approximately 3 to 4 months or longer according to where and how used. It is evidenced that this industry's practice is to "expense" its serviced articles when taken from stock, which is to understand that when they are made ready for use and processed they cease to have an inventory value and are nothing more than used material. Its unused and worn out materials are eventually cut into rags when possible and sold to industry as waste. This final act of disposal of no longer useable materials is said to be unprofitable. Appellant followed these practices prior to 1948 and made no return of its used materials for the purpose of taxation. It did not do so in its returns for the years under review.

On June 13, 1947, the Tax Commissioner issued a directive on the taxation of linens and garments of towel and linen service companies and industrial service and supply companies. It recites that its necessity is prompted by a lack of uniformity in the industries' personal tax returns and inventories. It directs the Commissioner's subordinates that where a report for taxation does not reflect true value the following method is to be pursued: That the purchase cost of materials, both used and unused, during the 12 months of the calendar or business year is to be ascertained, and that 70% thereof shall represent true value as classified and provided in §5388 GC. Examiners are cautioned to carefully examine a taxpayer's books. Responsive to this directive and statute a departmental examiner, after application for review and redetermination had been filed, did examine the taxpayer's books during the week of September 23-28, 1948. His report,

which was adopted by the Tax Commissioner, is the basis of the orders made. It found the true value in money of appellant's inventories to be $68,750.00 for the year 1945; $65,861.00 for the year 1946 and $119,651.00 for the year 1947. The examiner, in his testimony before this Board, has this to say concerning the method pursued by him:

Respecting new and unsued garments and towels, their true value in money for taxation was established by adopting the values as returned by the taxpayer in its tax returns, balance sheets and letters as of its end of the year inventories. Seventy per cent of those figures was then taken to establish the basis upon which the tax was computed.

Appellant contends that this method of computation is predicated upon two incorrect factors. First, it is a manufacturer and as such entitled to a reduction of its tax base of 50% and not 70% as allowed by the directive and order appealed from. Second, that as manufacturer or merchant its year's end inventory values were improperly adopted, when its average monthly inventory values should have been used. Third, it is said that the force and effect of §§5381, 5382, 5385 and 5386 GC have been arbitrarily disregarded.

The method pursued as to used garments and towels is considerably more involved. The evidence concerning it is difficult to follow. We must preface the method pursued by certain facts shown by the records. The present corporate managing officers but recently came into office. They were unfamiliar with the corporation's books. In fact, the books for 1944 and 1945 were not available. Its present management method of bookkeeping was, in fact, only begun during the latter half of 1946. The Company never kept any inventory values, annual or monthly, of its used garments and towels for the tax years in question, considering them of no value when taken from stock for processing, and charged them off as expense. This being the state of its used material records, a method had to be devised to ascertain used values in accordance with the directive. To that end, after the filing of the assessment orders and the applications for reconsideration and redetermination, the Department of Taxation directed Examiner Morse to the Company office to ascertain such values. His examination was conducted in September of 1948 as hereinbefore noted. By actual physical count and Company records it was found that 12,986 coveralls, 2,620 coats, 3,778 pants, 2,638 shirts, 2,043 fender covers, 21 smocks, 32 Terry towels and 315,840 industrial towels were in service as of that week. This count is conceded by appellant to be substantially correct. The examiner found, as a result of his

count, that an average of 15% of used towels were lost by customers; and, in accordance with departmental custom as applied to similar industries, he deducted 18% from the total gross towel count, leaving 82% thereof as the total actual used towel figure. Used garments and towels were then valued at average cost submitted by the taxpayer's representative, Bishop, for the respective years. To this or those sums was then added the Company furnished cost of processing these garments and towels, which established total accumulated cost. Since 1948 was an unfinished year, Bishop and Morse agreed, in the absence of records, that 1947 figures would be taken as the norm. The examiner next considered the age and service use of towels and, all things considered, determined that the used towel accumulated cost figures should be and were listed at 50% in accordance with similar industrial inventories instead of taking 70% thereof as specified in the Commissioner's directive. As to used garments and towels, the count as depreciated and method used was carried throughout the years 1944, 1945 and 1946. Appellant complains of this procedure in several respects; first, that used garments and towels have no inventory value; second, that if it be found that these articles have a value, that as a manufacturer or merchant its average monthly inventories of used articles should have been taken as the taxable base rather than its year's end inventory as built up by the examiner; third, that inasmuch as the September, 1948, count of articles was carried into the 1944, 1945 and 1946 computations, the numbers used were in excess of the articles actually in service during those years, and that thereby the taxpayer has been and is now required to pay a tax on articles which it did not then possess.

From the questions presented, the Board chooses to first consider the claim of appellant that it is a manufacturer and if it be not found to be such, is it a merchant? If it be a manufacturer it is entitled to list the inventory of its new garments and toweling at 50% and not 70%. If it be either merchant or manufacturer it is entitled to have its inventories taken on the monthly average basis, if such are ascertainable, rather than a year's end inventory. **Secs. 5382, 5385 and 5386 GC** so provide. These statutes are, in fact, tax exemption statutes and, like other cases of special privileges, are to be strictly construed. Expression of this general rule, with sustaining authorities, is to be found in the notes appearing in 10 A. L. R. 1273 (1274), 116 A. L. R. 1111. Ohio recognition of that rule is found in **Iron Co. v. Glander, 145 Oh St, 423 (430) 31 O. O. 39,** wherein the court states that:

"It is well settled that the provision of any statute which purports to except certain property from general statutory provisions governing taxation is a measure of exemption, and that laws relating to exemption of property from taxation being in derogation of equal rights are strictly construed."

In that case §5385 GC was under consideration. It provides, in part:

"A person who purchases, receives or holds personal property, of any description, for the purpose of adding to the value thereof by manufacturing, refining, rectifying, or by the combination of different materials with the view of making a gain or profit by so doing, is a manufacturer, * * *."

Unfortunately, in defining the word manufacturer this section employs an applicable derivative thereof, to wit, "by manufacturing." The word has received frequent consideration by the courts, as is evidenced by reference to 26-Words & Phrases - 408, from which a generally accepted understanding of the term may be produced as follows: It contemplates a change wrought through the application of forces which results in the transformation of some preexisting substance or element into something different with a new name, nature, form or use. To manufacture implies change. There must be transformation. A new and different article must emerge, having a distinct name, character or use, as is held in City of Louisville v. Ewing Von-Allmen Dairy Co., 268 Ky. 652, 105 S. W. (2d) 801. In In re Niagara Contracting Co., 127 F. 782, it is said that the process of manufacturing is supposed to produce some new article by the application of skill and labor to the raw material. We are unable to perceive that the taxpayer's processing of its garments and towels changes or transfers the articles' name, nature, form or use. No new and different article emerges. Its character or use is not changed. They were purchased as garments and towels and were serviced to their customers as such. Garments were simply altered and decorated to fit and comport to the use of an employee of its customer. Towels were simply cleansed of foreign substance and made fit for their intended use. The Board feels that it is supported in its view by what is found in **Schumacher Stone Co. v. Tax Commission, 134 Oh St 529, 13 O. O. 161,** and **Cleveland-Cliffs Iron Company v. Glander, 145 Oh St 423, 31 O. O. 39.**

Is the taxpayer a merchant? Sec. 5381 GC, enacted long prior to the Sales and Use Tax Statutes, defines the term as:

"A person who owns or has in possession or subject to his control personal property within this state, with authority to sell it, which has been purchased either in or out of this state, with a view to being sold at an advanced price or profit, or which has been consigned to him from a place out of this state for the purpose of being sold at a place within this state, is a merchant."

The taxpayer says that he sells service upon contract. He does not sell "personal property." It does not lease its goods so as to come within the terms of the sales tax statutes. See §5546-1 GC as recently amended. It does not pass title of any kind. If garments or towels are lost in service the customer is required to pay the reasonable value of the lost article. It retains title. The transaction has all the earmarks of a contract of bailment. We see no difference between the old example of a livery stableman who furnished his patron with a horse and carriage for a price. Clearly, under the statute the garments and towels were not "purchased * * * with a view to being sold at an advanced price or profit." Since only service is sold and articles of personal property are not sold, it must be found that appellant is not a merchant.

Since the taxpayer is neither a manufacturer nor a merchant, it must be classified under the general statute for listing and assessing personal property at its true value in money, which statute is §5388 GC and which reads, in part:

"Excepting as herein otherwise provided, personal property shall be listed and assessed at seventy per centum of the true value thereof, in money, on the day as of which it is required to be listed (January 1 of each tax year), or on the days or at the times as of which it is required to be estimated on the average basis (in the case of manufacturers or merchants), as the case may be. * * *."

It must, therefore, follow that the Tax Commissioner did not err in assessing appellant's new and unused goods at 70% of its true value as displayed by its years' end inventories. Appellant was not entitled to insist on its average monthly inventories being taken on the tax base. Not being a manufacturer, it is not entitled to a 50% depreciation of its tax base. The Tax Commissioner, therefore, did not arbitrarily disregard the statutes enumerated.

Regarding the claim that its used garments and towels have no inventory value, the Board of Tax Appeals is emphatically of the view that this claim is without the vestige of merit; but if this were true, then carried to its logical conclusion, its customers are paying something for nothing. Whatever the custom of the industry may be—that is, to expense articles when taken from stock—it cannot have the effect of an amendment to exemption statutes. These articles, so long as cleaned and returned to service and, in fact, to the day they are sold as wiping rags and waste, are of some value. The value is, of course, a diminishing one; that is, from 100% thereof before put in service to a fraction of 1% before sold as waste. Some middle ground must be found to establish that value. Appellant expended these articles. It kept no inventories or books which were enlightening to the Department of Taxation. Its business practice and neglect ought not to checkmate the State of Ohio in collecting its just tax. Every person is required to pay his just portion of the tax burden. If appellant had a free ride in taxation parlance prior to the issuance of the directive it ought not, in good conscience, complain of surprise because of its issuance. The situation required the devising of some method of appraising value. Sec. 5388 GC and the directive required that 70% of inventory be considered as true value. The examiner and his superior, recognizing the rapidly deteriorating use and value of these goods, took that fact into consideration and applied a depreciation figure of 50% in accordance with similar inventoried goods of like industries. We think the method pursued in·respect to used articles was fair and just to the taxpayer.

There still remain three matters of complaint for the Board's consideration. The first two concern a mathematical computation of the accumulated cost of fender covers for the years 1944 and 1945, which produced a cost of $7,259.02 in 1944 when the same should have been $725.90; and a cost of $7,871.92 in 1945 when the same should have been $787.20. These errors are, by the Tax Commissioner, admitted to exist. In view of the order hereinafter made, the Board will make no attempt to make any correction thereof.

We now revert to the particular complaint that the Tax Commissioner and his agent, Morse, failed to give effect to the fact that the service returns of uninventoried used merchandise of the appellant for the years 1944, 1945 and 1946 were less than in the year 1948, and that hence the number of units in service were proportionately less. The examiner did give effect to the difference in price for the articles purchased. To develop this claim of error appellant called its

accountant as a witness, who testified that appellant's returns for its Ohio services rendered in 1944 amounted to $80,131, which represents 69.41% less from service receipts for that year than for the year 1948, which amounted to $314,000.00. Like figures for the year 1945 disclose Ohio service receipts in the sum of $83,631.35 or 69.074% less than for the year 1948. Like figures for the year 1946 establish Ohio service receipts in the sum of $197,459.07 or 24.62% less than for the year 1948. In arriving at these figures the witness stated that cost of service to appellant's patrons was 20% less in 1944 and 1945 than in 1948, and ———% less in 1946 than in 1948, and that his computations took this difference in service charges into account. The price paid for this merchandise, plus processing costs for these three years, is not in dispute.

Inasmuch as appellant's counsel fails to give this phase of the case any consideration, we turn to what the Departmental auditor has to say respecting the method pursued by him and its effect upon the matter of quantity of uninventoried merchandise used in these years which produced service income. We have read and reread Morse's testimony as elicited by the attorney examiner and appearing on page 185 of the record and thereafter. It therefrom appears that at date of examination, in September of 1948, Company books for 1944 and 1945 were not made available. Appellant's accountant now says before this Board that the information as to quantities for used merchandise is available from tax reports, balance sheets filed and Company records. The Department of Taxation, at final hearing, had to resort to formula and stipulation. At this date, however, appellant raises the question made. We doubt that appellant's accountant has considered all accounting factors. The actual amount of used taxable merchandise possessed by the Company in 1944, 1945 and 1946 which appellant did not inventory is problematical; and if this Board were to reach any definite quantities for these years it would have to resort to mere speculation. It is, therefore, considered that in fairness to the litigants and the Board this phase of the case should be remanded to the Department of Taxation for reconsideration and recomputation.

It follows that in all respects, save the two mathematical computations and the quantities of used merchandise possessed by appellant in the years 1944, 1945 and 1946, the orders complained of are affirmed, and the cause is remanded for further consideration and assessment on the three exceptions noted.