**AMERICAN OAK LEATHER CO., Appellant, v. PECK, Tax Commr., Appellee.**

Board of Tax Appeals.

No. 19498. Decided December 18, 1951.

Joseph H. Head, Robert L. Black, Jr., Cincinnati, for appellant.

Hon. C. William O'Neill, Atty. Genl., by Paul Tague, Jr., of Columbus.

## OPINION

By HOWARD, Secretary.

On January 25, 1951, the Tax Commissioner denied appellant's application for review and redetermination of an increased personal property tax assessment for the year 1950 theretofore made. Appellant appeals from the denial order. So far as we know the questions made are without precedent in Ohio.

The matter now comes on for further and final consideration upon the Commissioner's transcript, the notice of appeal, an agreed stipulation of facts and briefs of counsel. The stipulated facts are set forth in toto:

"1. The American Oak Leather Company was incorporated in 1880 and organized under the laws of Ohio as a corporation for profit. Its principal place of business and only location in Ohio was at Kenner and Dalton Avenues, Cincinnati, Hamilton county. Prior to July 1, 1949, the only business of the Company was the tanning of sole leather by two processes: vegetable tanning and chrome retan.

"2. At a Special Meeting of Shareholders of the Company duly convened and held on July 1, 1949, more than two-thirds of the shareholders entitled to vote voted in favor of dissolution and liquidation of the Company. Pursuant thereto the Company's Certificate of Dissolution was duly filed with the Secretary of State of Ohio on October 3, 1949. By December 31, 1949, the Company had made liquidating distributions to its shareholders totalling $3,399,700, and representing more than half of the total such distributions.

"3. Beginning in November, 1948, the Company ceased to soak (process) any more hides in the vegetable tan department and thereafter its activities in this operation consisted of completing the work in process and realizing upon it. In August, 1949, the Company ceased to put hides in process in the chrome retan department; thereafter its activities in this operation consisted of completing the work in process and realizing upon it. The finished products of both departments were sold in regular channels up to October, 1949, when most of the remaining balance was sold in a lump sum sale. The

materials still on hand December 31, 1949, were disposed of principally by redelivery to the Company's suppliers and the balance by lump sum sale. The entire Ohio inventory of the Company at all times pertinent had been manufactured by it, and was stored, in the county of manufacture.

"4. The inventories on hand at the ends of the various months during 1949 were:

"On last day of,

| | |
|---|---|
| January, 1949 | $1,837,822. |
| February | 1,365,901. |
| March | 1,077,200. |
| April | 868,113. |
| May | 692,261. |
| June | 483,301. |
| July | 348,905. |
| August | 209,791. |
| September | 115,101. |
| October | 355. |
| November | 355. |
| December | 355. |

"The average of month-end inventories on hand was $583,-288.

"5. Beginning in July, 1949, the Company sold its manufacturing machinery, all of which was located in its plant at Cincinnati. On September 1, 1949, the Company sold all of the machinery and equipment used for chrome retan to Howes Leather Company and also leased to Howes the entire part of the Company's plant theretofore used in this process. The balance of the machinery, being that used in vegetable tanning, was sold to various buyers so that on December 31, 1949, there remained only miscellaneous machinery and equipment having a true value of $5,186.24 and supplies, fuel, and fixtures at a true value of $4,518. The vegetable tanning plant was incapable of operation as a complete plant after July 31, 1949. The Company ceased all processing after September 1, 1949, and after that date it was physically impossible to re-enter the business of tanning leather.

"6. On December 30, 1949, the Company sold and conveyed to The Hotel Burnet Company all of the Cincinnati real estate except that part which had previously been leased to Howes Leather Company. The latter part remained under said lease until sold and conveyed in February, 1950.

"7. The Company did not pay and was not assessed a franchise tax for the year 1950.

"8. On or before May 31, 1950, the Company filed a corporation return of taxable property with the Auditor of Hamil-

ton County, as shown in the record certified by the Tax Commissioner, and in due time paid the tax of $833.75 disclosed thereby. On September 1, 1950, the Company paid under protest an increase of tax in the amount of $12,353.06, pursuant to an amended preliminary assessment certificate issued by the Tax Commissioner of Ohio, based on changes to said corporation return made by a tax examiner."

On page 16 of the Commissioner's transcript appear certain comments by the departmental examiner, which likewise appear to have been carried into the Tax Commissioner's final order complained of. Inasmuch as these comments disclose the reason and cause for the increased assessment made on appellant's tangible personal property after dissolution for the tax year 1950, they are now set forth in full.

"**Schedule 2.**

"Machinery & Equipment was assessed as idle equipment at the rate of 10% of its cost value of $51,862.38 equals $5186.-24. This amount we listed at 70% instead of 50%.

"Our reasoning was as follows: the corporation had ceased to manufacture for the purpose of dissolving. The common and preferred stockholders were paid for the holdings at par value as of 12-31-1949. The Board of Directors are then acting as Trustees for the sale of the remaining assets of the corporation. At this time they cease to be manufacturers and become merchants. For this reason we have used the 70% list instead of 50% as the equipment was considered as having been withdrawn from the production line.

"**Schedule 3.**

"Inventory was assessed on the physical monthly average at 70% list for the same reason as above.

"**Schedule 4.**

"Furniture and Fixtures was assessed at 20% of its remaining cost value at 70% list. Fuel and non-productive supplies inventories were assessed at year end values and taxed at 70% list.

"**Schedules 8 and 10.**

"We disallowed the method of allocation as to within and without the State based upon a percentage of stock holdings, since these deposits and receivables arose out of business within the State of Ohio and were still under the control of the Board of Directors."

The questions made by appellant are as set forth in its brief:

"(1) Is a dissolved corporation a taxpayer within the meaning of §5366 GC?

"(2) Is the tangible property of a dissolved corporation tax-

able for the year 1950, if during the calendar year 1949 its shareholders voted to dissolve, its Certificate of Dissolution was filed, its machinery and inventory substantially sold or disposed of, its operations terminated except for tag-end sales, its plant no longer capable of its designed operation and more than half of the proceeds of liquidation distributed to its shareholders?

"(3) If such tangible property is taxable, is the inventory of such a dissolved corporation, which prior to liquidation was a manufacturer, taxable at 70% of average month-end values during the year 1949, or at 50% of such values, or at 70% of the year-end value of the inventory?

"Appellant submits that the first two questions must be answered in the negative, but that if both are affirmatively answered, the inventory is taxable at not more than 70% of the year-end value thereof."

Appellant further reasons that by its dissolution its whole purpose and character was converted and transformed in contemplation of law from a corporation for profit into a liquidating trust. It maintains that it was no longer doing business in this State, and that its undisposed of tangible property was not used in business, and that it was no longer in business for profit or engaging in any commercial enterprise. It is urged that it is no longer a manufacturer and is not now a merchant. Appellant's liquidating officers do not question but concede the dissolved corporation's liability for personal taxes assessed subsequent to dissolution upon its intangible property to the extent the beneficial owners thereof are taxpayer residents of the State of Ohio.

It is the policy and statutory rule of this State not to tax tangible personal property (with certain exceptions of no importance here) unless the same is "used in business," which §5325-1 GC has defined in this manner:

"Within the meaning of the term 'used in business,' occurring in this title, personal property shall be considered to be 'used' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as material, parts, products or merchandise; * * *."

Since appellant contends that it is not a taxpayer under the terms of §5366 GC, we quote its applicable portion:

" 'Taxpayer' means any owner of taxable property and includes first, every person residing in, or incorporated or organized by or under the laws of this state, or doing business

in this state, or owning or having a beneficial interest in taxable personal property in this state, * * *."

This section further enumerates certain kinds and classes of taxpayers, among whom are included:

"(b) Partnerships, corporations, associations and joint stock companies, under whatever laws organized or existing, doing business or having taxable property in this state; and corporations incorporated by or organized under the laws of this state, wherever their actual business be conducted."

In order to correctly determine the status of appellant on tax lien day, January 1, 1950, it becomes necessary to examine another section of the code; that is §8623-80 GC. Before examining its present provisions it is necessary that its history be reviewed. On February 16, 1927, the legislature enacted a "General Corporation Act" (112 O. L. 41). **Sec. 8623-80 GC** thereof supplanted and broadened older §8741 GC and §§8742 and 8743 GC. This act and section materially changed previous concepts; in fact, a corporation voluntarily dissolved is given life after legal death until final liquidation. **Sec. 8623-80 GC,** as originally written reads:

"Sec. 80. Upon the filing of any such certificate together with receipts showing the payment of all franchise and other taxes to the date of such filing or the giving of security therefor satisfactory to the tax commission, the corporation shall be dissolved and shall cease to carry on its business, **but it shall continue for the purpose of** paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and **doing all other acts required to adjust, settle and wind up its business and affairs,** and it may do all such acts and may sue and be sued in its corporate name." (Emphasis ours.)

On April 4, 1929, the next legislature revised the act (113 O. L. 413 [451]) and made the section read:

"Upon the filing of any such certificate, together with:

"(a) Receipts, certificates or other evidence showing the payment of all franchise **and personal property taxes** accrued up to the date of such filing: **or,**

"(b) An affidavit of one of the officers of said corporation containing a statement of (1) the counties in this state in which the corporation has personal property, and (2) a statement of the assets and liabilities of such corporation and the estimated value thereof, or, in lieu thereof, a statement that the net assets of such corporation are sufficient to pay such taxes; the corporation shall be dissolved.

"Any corporation which shall be dissolved and any corporation whose articles have been cancelled shall cease to carry

on its business and shall be without authority so to do, but it shall continue for the sole purpose of paying, satisfying and discharging any existing liabilities and obligations, collecting and distributing its assets and doing all other acts required to adjust, settle and wind up its business and affairs, and it may do all such acts and may sue and be sued in its corporate name.

"Any person or persons having possession of any such assets shall be personally liable in an amount equal to the fair cash value of such assets available at the time of dissolution for the payment of such franchise and personal property taxes, if he or they shall make any distribution thereof without paying or adequately providing for the payment of such taxes." (Emphasis ours.)

On May 28, 1945, the General Assembly again amended §8623-80 GC (121 O. L. 167). The section as reenacted bears the following title:

"An Act to amend §8623-80 GC, relative to winding up and dissolution of corporations **and the payment of personal property taxes in connection therewith.**

"Winding up and dissolution; **payment of taxes.**" (Emphasis ours.)

This last amendment makes but two changes in the first paragraph of the then existing law, and drops therefrom that part designated as (b) 2. We set it forth as it now stands:

"Upon the filing of any such certificate, together with receipts, certificates or other evidence showing the payment of all **current and delinquent** franchise and personal property taxes accrued up to the date of such filing, **and** an affidavit of one of the officers of said corporation containing a statement of the counties in this state in which the corporation has personal property, the corporation shall be dissolved."

Ohio's conception of corporate life is threefold. (1) It has a prenatal status that exists up to the point of its coming in being. Its incorporators enjoy certain privileges, and it is subject to certain obligations and direction. (2) The actual business life of a corporation for which it was created. (3) Its continuance for certain purposes, enumerated in §8623-80 GC, until its complete liquidation. The act of dissolution does not deprive it of all life. That which ceases is the enjoyment of its greater and lesser franchises, its special privilege and immunities, and the right to further pursue the business or purposes for which incorporation was procured. The legislature recognized that the act of dissolution did not end all corporate business, but, like an individual after death, its activities must be settled; its claims collected, its debts paid,

its sums due the State be satisfied, its property (real and personal), its manufactured product, its raw materials, its machinery and equipment, its office supplies, and its securities be sold and converted into cash, and its stockholders proportionately be placed in possession of the balance of the corporation's assets. The selling of its assets for the best price obtainable is a highly important and particular business that requires special business acumen. Can it be said that the liquidators are not engaged in business, and the property with which they deal is not "used in business"? It must be noted that the legislature, in §§5325-1, 5328 and 5388 GC, did not say "used in business of manufacturing," but employed the much broader term of "used in business"; that is, in any kind of business or "special operation" as §5325-1 GC states. Although taxation statutes are strictly construed, it must be remembered that statutes, like §8623-80 GC, granting corporate liquidating powers, are remedial and are universally construed liberally.

The Board's independent search has revealed but one adjudicated case bearing directly upon the question at issue. In Stoner v. Higginson, 12 P. S. 296, 316 Pa. 481, 175 Atl. 527, the question was whether or not service upon a partnership previously had voluntarily announced its withdrawal from the business for which it was created. It placed a liquidating agent in charge to wind up its affairs. Pennsylvania law made the effectiveness of the service dependent upon whether or not the liquidating agent was engaged in business. It was held that he was so engaged; and that the property with which he dealt was of necessity used in business.

It is noted that §8623-80 GC as originally enacted in 1927, and both of its subsequent amendments, provide that the corporation "shall cease to carry on its business," "but shall continue" for the purposes enumerated. The word "shall," to our notion, used in such close proximity, is mandatory and not permissive. It is also noticed that the original section speaks of "all franchise and other taxes." The amendments interject the word "personal" before the word "taxes." The 1945 amendment reads "all current and delinquent franchise and personal property taxes." The title to the 1945 amendment and present statute is expressive of legislative intent in the use of the words "and the payment of personal property taxes" in connection with dissolution. Retention of the statute's affidavit feature, as to "the counties in this State in which the corporation has personal property," can have but one purpose, which is, since the corporation proper will make no further personal property tax return, the guide by which the

Department of Taxation makes allocation of all further tax collections between the several counties wherein personal property of the liquidating corporation is situated.

The Board of Tax Appeals finds that the dissolved corporation is a taxpayer within the meaning of §5366 GC; and that its tangible personal property used in business is taxable for the year 1950.

As previously indicated, appellant insists that if it is neither a manufacturer nor a merchant its inventory is taxable at 70% of its true value at the year's end. This Board had that question under consideration in **Workingmen's Overall Supply Co. v. Glander**, Case Nos. **15600 and 15601, 58 Abs 385, 42 O. O. 181,** under date of January 4, 1950, wherein it was held that where one was engaged in business, and its tangible personal property was used in business, that it was taxable at 70% of its year-end value. We see no need for another exposition of the reasons upon which this conclusion was reached.

And now reverting to Nos. 4 and 5 of the stipulation of facts, we find it therein agreed that the true value of appellant's tangible personal property on January 1, 1950, was:

| | |
|---|---:|
| Machinery and equipment—true value | $ 5,186.24 |
| Supplies, fuel and fixtures true value | 4,518.00 |
| Inventory—true value | 355.00 |
| True value of total taxable tangibles | $10,059.24 |
| 70% thereof—true taxable base | $ 7,041.49 |

The Board of Tax Appeals finds that the Tax Commissioner was right in his order in taxing appellant's tangible personal property for the tax year 1950, but that he is in error in his manner of its computation. The order complained of is affirmed in part and reversed in part as herein indicated, and the cause is remanded to the Tax Commissioner for correction in accordance with the findings herein made.

Dissenting Opinion by Chairman Kirwin.

I agree with the majority of the Board that if the property here involved is subject to taxation it is taxable at 70% of year-end value. However, I believe that the final order of the Tax Commissioner complained of should be entirely reversed and said property found not to be subject to taxation. Tangible personal property (with exceptions herein unimportant) is subject to Ohio taxation only if "used in business" in Ohio; and this is true regardless of the character of the owner of said tangible personal property—corporation —individual—partnership, etc.

I am of the opinion that the tangible personal property here involved was not "used in business" on or after January 1, 1950, for the reason that the activities of the appellant, on and after that date, were not of such a character as to bring them within the definition of "business" as set out in §5325-1 GC.

Said activities, in my opinion, did not constitute an enterprise conducted for gain, profit or income—but merely were the activities of a dissolved corporation in disposing of its property regardless of gain or profit.

It appears to me that the appellant, prior to January 1, 1950, had done everything required by the provisions of §8623-80 GC, to attain the status of a dissolved corporation—and its right to engage in business was thus terminated.