Matthias, J.
Two basic questions are raised by this appeal.
First, do the cleaning, blending and roasting of green coffee beans constitute manufacturing within the meaning of the Ohio tax laws? Second, where green coffee is delivered from foreign countries to a coffee processing plant and stored therein for use in such plant, does it retain its character as an import so long as it is in the original package and is it thus immune, under the provisions of Section 10, Article I of the United States Constitution, from state taxation?
First, we will turn our attention to the question as to whether appellant is a manufacturer.
Section 5711.16, Revised Code, provides in part as follows:
“A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit by so doing is a manufacturer.”
Appellant contends, however, that such statutory definition is not dispositive of whether appellant is a manufacturer so far as the federal Constitution is concerned. It is appellant’s theory that it is engaged in the business of selling, not manufacturing, coffee. However, the term, “manufacturing,” has broad connotations; it is not confined solely to the construction of tangible property but extends to the creation of a usable product. The activities in which any given business engages must be examined to determine whether such business is engaged in manufacturing.
*437 In general it may be said that one is engaged in manufacturing when he takes raw material unfit for human use or consumption and by the use of various processes converts it into a finished product which is fit for such use or consumption. See City of Louisville v. Zinmeister & Sons, 188 Ky., 570, holding one engaged in roasting coffee to be a manufacturer.
A consideration of the facts in the instant case clearly indicates that appellant is engaged in manufacturing. Here green coffee beans from a number of foreign countries are delivered directly to appellant’s plant. There is no question that at that time the coffee beans in their delivered state are unfit for consumption. These coffee beans are good for only one purpose and that is for consumable coffee after a variety of processes are performed thereon. They have no present commercial value except to the coffee roaster. Before such coffee beans have any general commercial value, they must be cleaned, blended and roasted, and it is only then that they are fit for consumption. In other words, these coffee beans are not a salable consumable commodity when delivered to appellant; it is only after such coffee beans are cleaned, blended and roasted that the commodity which appellant sells comes into existence.
Thus, the cleaning, blending and roasting of green coffee beans constitute manufacturing.
However, appellant urges that this coffee was still in the original packages in which it was imported and retained its character as an import, exempting it from state taxaton, under the terms of Section 10, Article I of the Constitution of the United States, which reads in part as follows:
“No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress.”
In this case there is no question that this coffee was still in the original package at the time the tax was assessed thereon.
So far as taxation is concerned, the “original package doctrine” arose in the case of Brown v. Maryland, 25 U. S., 419, 12 *438 Wheat., 419. That ease held in essence - that the state conld not tax property imported for sale so long as the property remained in the original package in the -warehouse of the importer. Such doctrine was extended in Hooven & Allison Co. v. Evatt, Tax Commr., 324 U. S., 652, to goods imported hy a manufacturer for use in his business, which goods retained such character as imports until used for the purpose for which they were imported.
However, the purpose of Section 10, Article I of the United’ States Constitution, is to prohibit a state from imposing taxes on imports, or rather import taxes, and not to relieve property from state taxation which has become part of the inventory used in business by a manufacturer.
The original package doctrine was modified by the Supreme Court of the United States in Youngstown Sheet & Tube Co. v. Bowers, Tax Commr., 358 U. S., 534 (affirming 166 Ohio St., 122), which held that the imported product loses its character as an import when it is irrevocably committed to use in manufacturing.
In that case, a manufacturer of iron and steel imported iron ore from foreign countries for use in its manufacturing. The ore was stored in piles in ore yards adjacent to the processing plant, and the daily ore needs of the plant viere supplied from these ore yards. Similarly, in the case of United States Plywood Corp. v. City of Algoma, which was decided together with the Youngstown case, a manufacturer of veneered wood products imported veneers in bundles which were kept in the same form in which received in piles for use as needed in the daily manufacturing process of the plant. The court in those cases said:
“We are therefore confronted with the practical, albeit vexing, problem of reconciling the competing demands of the constitutional immunity of imports and of the state’s power to tax property within its borders. The design of the constitutional immunity was to prevent ‘ [t]he great importing states [from laying] a tax on the nonimporting states,’ to which the imported property is or might ultimately be destined, which would not only discriminate against them but also ‘would necessarily produce countervailing measures on the part of those *439 states whose situation was less favourable to importation.’ * * * ppg constitutional design was then to immunize imports from taxation by the importing states, and all others through or into which they may pass, so long as they retain their distinctive character as imports. Hence, that design is not impinged by the taxation of materials that were imported for use in manufacturing after all phases of the importation definitely have ended and the materials have been ‘put to the use for which they [were] imported’ (Hooven é Allison Co. v. Evatt, supra, at 657), for in such a case they have lost their distinctive character as imports and are subject to taxation. * * * it###
“The materials here in question were imported to supply, and were essential to supply, the manufacturer’s current operating needs. When, after all phases of their importation had ended, they were put to that use and indiscriminate portions of the whole were actually being used to supply daily operating needs, they stood in the same relation to the state as like piles of domestic materials at the same place that were kept for use and used in the same way. The one was then as fully subject to taxation as the other. In those circumstances, the tax was not on ‘imports,’ nor was it a tax on the materials because they had been imported, but because at the time of the assessment they were being used, in every practical sense, for the purposes for which they had been imported. They were therefore subject to taxation just like domestic property that was kept at the same place in the same way for the same use. * * * ”
The rule which is now applicable to property imported by a manufacturer is that once such property becomes a part of the inventory of the manufacturer necessary to supply its current operating needs the property loses its character as an import and is subject to state taxation. In other words, once an import is irrevocably committed to supply the current operating needs of a manufacturer and is being used to supply its daily operating-needs the status as an import is lost.
Section 5709.01, Revised Code, provides in part that “all personal property located and used in business in this state * # * are subject to taxation.”
*440 Personal property is used in business “when stored or kept on hand as material.” Section 5701.08 (A), Eevised Code.
Clearly, such coffee beans are used in business by appellant. Although appellant contends that it is engaged in selling coffee, not manufacturing it, it is readily apparent from the record that this is not the fact. Appellant is engaged in both the manufacture and sale of coffee. It is not contended that appellant is engaged in the business of selling green coffee. It sells only the finished product.
Therefore, we are left with the question as to whether the coffee stored by appellant has retained its character as an import. Is this inventory of green coffee necessary to supply the current operating needs of appellant within the meaning of the Supreme Court decision? If it is, the United States Supreme Court has held that once it is placed in a position to supply the current operating needs of appellant it loses its character as an import and is used in business within the meaning of the Ohio tax statutes.
Here the coffee is stored in the plant in a place immediately adjacent to the manufacturing area. A supply for only three weeks, duration is all that is maintained at any given time and from this supply is drawn the daily needs of the plant. This falls exactly within the rule promulgated by the Supreme Court of the United States in the Youngstown Sheet & Tube case holding that such material has lost its character as an import.
In other words, coffee stored by an importer-manufacturer of coffee in an amount sufficient only to meet the manufacturer’s current operating needs and from which is drawn the amount needed daily in its business is used in business and thus has lost its character as an import even though it is stored in the original package in which it was imported.
The decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is affirmed.

Decision affirmed.

Taft, C. J., Zimmerman, O’Neill, Griffith, Herbert and Gibson, JJ., concur.