## Prestonsburg Water Co. v. Prestonsburg Board of Sup'rs et al.

## Same v. Floyd County Board of Sup'rs et al.

June 6, 1939.

John W. Caudill, Judge.

S. S. Willis and Allen & Tackett for appellant.

Forest Short, Hill & Hobson, B. F. Combs and W. W. Burckett for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Prestonsburg Water Company is appealing from a judgment of the Floyd Circuit Court fixing the value of its water plant and property for the purpose of assessment for taxation for the year 1935 at $60,000 and adjudging that no part of its property, machinery or equipment was manufacturing machinery within the terms and meaning of Section 4019a-10, Kentucky Statutes. Both the county board of supervisors of Floyd County and the city board of supervisors of Prestonsburg made a raise in the assessment of the water plant and appellant prosecuted an appeal to the quarterly court where judgment was entered materially decreasing the assessment and holding that part of the property was manufacturing machinery and equipment. The respective boards prosecuted an appeal to the circuit court where the cases were heard together and judgment rendered in each of them as above indicated. These appeals followed. On motion of appellant the appeals have been heard together on the same transcript of evidence and will be disposed of in one opinion.

Grounds argued for reversal in substance are that (1) the appeal from the quarterly court to the circuit court should have been dismissed because of failure to follow the procedure prescribed by law; (2) that the evidence was not sufficient to authorize an increased valuation of appellant's plant for the purpose of taxation, and (3) that the filtration system in connection with appellant's plant is manufacturing machinery within the purport and meaning of Section 4019a-10, Kentucky Statutes.

It is first argued that the appeals from the quarterly court to the circuit court should have been dismissed because the bonds required by law in such cases were not executed. There was no copy of appeal bonds in the original record, but since the case was briefed by appellant, the clerk of the lower court upon motion of appellee and after due notice to appellant has been permitted to file a supplemental transcript showing that proper bonds were duly executed in each of the cases.

It is further urged that the appeal of the county board of supervisors should have been dismissed because it was not prosecuted by the county attorney or the sheriff, and Section 4128, Kentucky Statutes, is cited as

supporting this contention. It must be remembered that appellant prosecuted the appeals from the action of the board of supervisors of the county. The county attorney is required by law to represent the county board in the quarterly and circuit court in such cases. The county attorney prosecuted the appeal from the quarterly court to the circuit court in the name of the board against whom appellant had prosecuted the appeal to the quarterly court.

Section 4128, supra, provides that if the county attorney or the sheriff should feel that the state, county or any taxing district has been aggrieved by the action of the board of supervisors or on account of failure of the board to act, then either of such officers might appeal to the quarterly court but clearly that provision does not apply in this instance.

The cases were transferred to equity in the circuit court and heard by the Honorable J. B. Hannah, Special Judge, on transcript of evidence heard before the regular judge. Appellee took no evidence but apparently relied on the evidence of witnesses offered by appellant.

Mr. E. S. Mays, president of the company, testified that he purchased the plant in 1929 for $60,000 but that when he purchased it he had it sold to the People's Light and Power Company for $75,000; that the latter refused to take it and it was left on his hands; that he afterwards spent $40,000 for improvements including a filtration plant, making his total outlay something like $100,000. He testified that there was no way of arriving at the market value of a water plant because there were no purchasers for them; that because of agitation for municipal ownership and against utilities private interests were not seeking such properties. He stated that he had been offered $100,000 for the plant but it developed in his testimony as well as in the testimony of others that his offer was made by a promoter on behalf of the city who proposed to buy the plant and issue revenue bonds for it but that when the citizens met to consider this proposition they entered a strong protest against the purchase on the ground that the plant was not worth near $100,000; and it is shown that some of the people who are active in this litigation on behalf of the county and city were present and protesting against the purchase of the plant by the city. He filed a financial statement for the years 1932 to 1936, inclusive,

which showed that after deducting operating expenses from the gross income, the highest income for any of the years was $2,235.97 and for some years there was a deficit and in none of the years was the net income from the operation of the plant sufficient to pay interest on the outstanding bonds of the company. He testified in effect that taking into consideration all elements bearing on the question of valuation the fair market value of the plant would be $30,000. L. V. Aquadro, who had considerable experience in the operation of utility plants, went into great detail concerning methods of computation of values of plants which is difficult to understand but the substance of his evidence, however, is that the fair market value of the plant is from $25,000 to $30,000. George T. Archer, cashier of the Bank of Josephine, in Prestonsburg, who was acquainted with property and property value in Prestonsburg and Floyd County, testified that he advised the former owner of the plant to sell it to Mays for $60,000, taking $20,000 in cash and the balance in bonds because he thought she was doing well to get $20,000 in cash for it. A number of members of the board of supervisors were introduced as witnesses and testified that it was a prevailing custom in the county and city to fix the assessment of property for taxation at about 60 per cent of its fair market value; that they considered $100,000 as 60 per cent of the fair cash value of appellant's plant but they gave no reasons or data on which they based their calculations. The amount paid by Mays in 1929 and the amount he spent for improvements and betterments is not a proper criterion in fixing the fair market value of the property but in the circumstances that is one of the elements that might be considered in determining such value. The only offer shown to have been made for the plant was that made by the city at the behest of a promoter and Mr. Mays testified that he was anxious and willing to sell it to the city at the price indicated but the city did not purchase it.

According to the statement of the earnings the plant is not an attractive proposition, however, included in the operating expenses is the salary of the president and his son, amounting to about $2,400 annually. From the evidence as a whole we unhesitatingly conclude that the fair cash value of the property as fixed by the chancellor is much too high and that fixed by appellee and his witnesses is too low. The confused and uncertain

evidence furnishes no substantial basis for determining the fair cash value of the property with any degree of assurance or certainty, however, taking into consideration all elements, it is our conclusion that it should be fixed at $75,000.

While Section 172 of the Constitution provides in effect that all property subject to taxation shall be assessed therefor at its fair cash value estimated at the price it would bring at a fair voluntary sale; but the assessing authorities of Floyd county and the city of Prestonsburg, as elsewhere in the state, have disregarded this provision of the constitution and treated it as merely requiring uniformity and have attempted to adopt a general level of proportionate values. The evidence shows beyond question and as is admitted by counsel for respective parties that the level or standard adopted by Floyd county and Prestonsburg is 60 per cent of the fair cash value of the property and this court has held that all taxpayers in such circumstances shall be treated alike. McCracken Fiscal Court v. McFadden, 275 Ky. 819, 122 S. W. (2d) 761; Eminence Distillery Company v. Henry County Board of Supervisors et al., 178 Ky. 811, 200 S. W. 347. It follows therefore that appellant's plant should be assessed for taxation for the year in question at $45,000.

Finally it is argued by appellee that its filtration system is machinery actually used for manufacturing and is exempt from local taxation under Section 4019a-10, Kentucky Statutes. The evidence to sustain this contention is to the effect that the water distributed to the city of Prestonsburg is taken from the Sandy River; that it contains much mud, silt and acid from refuse from mines, all of which are removed and the water purified and rendered fit for use and consumption by the process of filtration; and it is urged in effect that this is converting raw material into a finished product and is therefore manufacturing.

In the case of City of Louisville et al. v. Ewing Von-Allmen Dairy Company, 268 Ky. 652, 105 S. W. (2d) 801, it was held that the pasteurizing of raw milk for human consumption was not manufacturing within the meaning of Section 4019a-10, Kentucky Statutes. It was said in the opinion that milk put through the process of pasteurization is still milk and the same likewise may be said of the filtration of water. It creates no new product

but is still water.   That case is directly in point and indicates the correctness of the chancellor's conclusion in the particular indicated.

For the reasons indicated the judgment is reversed with directions to enter judgment in conformity with this opinion.