**ALCOA MINING CO. v. DICKERSON et al.**

Court of Appeals of Kentucky.
June 1, 1951.

Rehearing Denied Nov. 2, 1951.

Raymond B. Dycus, Smithland, for appellant.

Roderick E. Keeney, Smithland, A. E. Funk, Atty. Gen., Hal Williams, William Scent, William T. Wathen, Asst. Attys. Gen., for appellees.

MOREMEN, Justice.

The appellant, Alcoa Mining Company, has appealed from a judgment of the circuit court sustaining Order No. 905 issued by the Kentucky Tax Commission holding certain mining and milling equipment belonging to appellant subject to both state and local taxation as tangible personal property and therefore not exempt from local taxa-

tion under the terms of KRS 132.200, which reads in part: "All property subject to taxation for state purposes shall also be subject to taxation in the county, city, school or other taxing district in which it has a taxable situs, except * * * the following classes of property, which shall be subject to taxation for state purposes only: * * * "(4) Machinery and products in course of manufacture, of individuals or corporations actually engaged in manufacturing, and their raw material actually on hand at their plants for the purpose of manufacture."

The appellant corporation is engaged in Livingston County in mining and milling crude ore, which contains zinc sulphide or sphalerite, at a locality known in the record as Eagle-Hutson. It was stipulated between the parties that about fifty per cent of the tangible personal property is devoted to mining purposes and about fifty per cent to milling purposes. The sole question presented for determination here is whether the milling process might properly fall within the classification of manufacturing. If it does, then, by the force of the exemption of the statute above quoted, the property used in the milling process is not subject to local ad valorem taxes.

It is necessary that we examine this milling process, and we accept as accurate, from appellant's brief, a description of the operation performed, which reads: "At the Eagle-Hutson, the sphalerite bearing rock is drilled and blasted loose from the solid ground. The unbroken rock is loaded, by mechanical shovels, into small cars which are hauled by a small locomotive to the shaft. This rock is dumped into an ore pocket or underground bin which, in turn, loads into a skip (a modified bucket for hoisting rock or ore out of the ground.) This rock or ore is hoisted and dumped into a crude ore bin on the surface. From the crude ore bin, by means of a feeder and conveyer, the ore is fed, at a uniform rate, to a crushing plant. In the crushing plant the original feed will vary from a ten inch block to a very fine size (all grades from ten inch by ten inch blocks to the finest of mud.) The first stage crushing plant re-

duces all to a two inch product. This material is then conveyed to a small screen where the half inch material is removed. The coarse over-size is crushed to half inch by a second crusher. All materials are then joined and sent to a fine storage bin. Ore from the fine ore bin is then fed with a little water (25% by weight) to a ball mill classifier circuit. The fines from the classifier are further diluted with water and pumped to a mixing tank where various chemicals are added. Material from this tank, now called pulp, flows by gravity into a flotation machine where, by means of high speed impellers, air is mixed into the pulp causing the formation of small air bubbles which rise to the surface of the machine and are skimmed off. This effects a separation of the sphalerite from the waste material. Waste materials or tailings are dumped into a pond where the sand is settled out and the clear water which overflows is pumped back into the mill for re-use. The zinc material, separated from the waste material, is pumped to a special tank called a thickener where part of the water is removed. The thickener zinc product from this tank is pumped to a filter for the removal of most of the water. This partially dried zinc (filter cake) is elevated to a bin high enough off the ground so that a truck may go under it. By means of a loader underneath the bin, trucks are loaded for shipment to a railroad point. This product is known to the markets by the name of zinc concentrate."

In the case of Burke v. Stitzel-Weller Distillery, 284 Ky. 676, 145 S.W.2d 861, 863, the court quoted with approval this statement from a previous case, Hughes & Co. v. City of Lexington, 211 Ky. 596, 277 S.W. 981, concerning the meaning of the term "manufacturing," as used in the statute, saying: "That the definition of the term is a question of law and for the courts is plain, but the courts are practically agreed that it is incapable of exact definition, and that there is no hard and fast rule which can be applied, but that each case must turn upon its own facts, having regard for the sense in which the term is used and the purpose to be accomplished."

In the case of Commonwealth for Use of Rock Castle County v. W. J. Sparks Co., 222 Ky. 606, 1 S.W.2d 1050, 1051, it was held that the W. J. Sparks Co., which blasted, crushed, and delivered rock for use as road material, was engaged in manufacturing. The court said: "If this were a case where the rock was merely blasted from the quarry and then broken into sizes for convenience of delivery, a different question would be presented. Here the rock in its native state is first blasted. It is then broken into sizes small enough to be placed in the crusher. It is then crushed and assorted into different sizes, some of which are ordinary stones, while others are mere macadam chips. Neither in its original state, nor when first blasted, is the rock suitable for use. By the process in question its shape, size, and adaptability are essentially changed, and the native rock is converted into an article suitable for use as road material. In our opinion this is manufacturing". (Citing cases.)

In the instant case Willard C. Lay, meterologist, with 27 years' experience in the mining industry, testified as follows:

"Q. 54 In its original state, before it goes through the milling operation, can zinc ore be adopted or applied to commercial use? A. I know of no such use.

"Q. 55 Can it be used for any purpose? A. I doubt if it would even make good road material."

We believe that the process of refining the ore in the case at bar was much more elaborate than that of breaking the rock for road material in the Sparks case. We have said in several cases that if by the processing of the raw material at the plant, the material is converted into a finished product or is so completed that in the ordinary course of business of the concern, it is ready to be put on the open market for sale to any person wishing to buy it, the plant which turns it out is a manufacturing establishment within the meaning of the statute. City of Louisville v. J. Zinmeister & Sons, 188 Ky. 570, 222 S.W. 958, 960, 10 A.L.R. 1269; Burke v. Stitzel-Weller Distillery, 284 Ky. 676, 145 S.W.2d 861.

We are of opinion that the milling process is manufacturing and falls within the exemption from local taxation.

Wherefore the judgment is reversed and the case remanded for proceedings not inconsistent with this opinion.