**DEPARTMENT OF REVENUE ex rel. J. E. LUCKETT and William Mayes, Appellants,**

v.

**ALLIED DRUM SERVICE, INC., Appellee.**

Supreme Court of Kentucky.

Jan. 31, 1978.

William S. Riley, Asst. Atty. Gen., William P. Sturm, Atty., Legal Staff, Dept. of Revenue, Frankfort, for appellants.

Irwin G. Waterman, Louisville, for appellee.

STEPHENSON, Justice.

The sole question presented on this appeal is whether the machinery used by Allied Drum Service, Inc., to process and reconstitute used drums is machinery used directly in a manufacturing process and, thus, exempt from sales and use tax.

The Kentucky Board of Tax Appeals found that the process was not manufacturing. The trial court found the process to be manufacturing and reversed the Board of

Tax Appeals. The Court of Appeals affirmed the judgment of the trial court. We granted discretionary review for the purpose of attempting to resolve apparent contradictory holdings of this court in the definition of manufacturing.

Allied purchased and installed new machinery to be used in a type of operation not previously performed by Allied. Allied purchased or acquired by trade-in used metal drums which were damaged by reason of puncture, crushed condition, or containing residue of materials and chemicals from the prior use. From the record, the following is a brief description of the process performed on the drums by the new machinery. The top of the drum is sliced and cut off, all paint and any contents remaining from the previous use of the drum are removed by incineration. Incombustibles are removed by a shot-blast operation, the drum is then beveled on a flanging machine and new plugs and gaskets are added. After the drum is reshaped by rolling, it is then made into a liquid-type container by sealing a new head on the drum or a solid-type container by attaching a removable lid. The final operation consists of painting the drum.

This description of the processing of the drums by Allied presents the question of whether or not Allied is engaged in manufacturing.

Machinery used in newly expanded industry is exempt from sales and use tax under KRS 139.480(8). Such machinery is defined in KRS 139.170 [1] as:

". . . that machinery used directly in the manufacturing process, which is incorporated for the first time into plant facilities established in this state, and which does not replace machinery in such plants."

The Department of Revenue assessed sales and use tax on this machinery. The litigation resulting from the assessment culminated in this appeal.

The problem presented here is not new. Over the years, this court has struggled with the definition of manufacturing and unfortunately has pronounced so many different definitions that a given set of facts and circumstances can rise or fall depending on which definition is applied.

The Department of Revenue takes the position that the process employed by Allied does not produce a *new* article, but begins with a used drum and ends with a used drum, thus, the contention that the process is not manufacturing.

The Department of Revenue relies principally upon our opinion in *City of Louisville v. Ewing Von-Allmen Dairy Co.*, 268 Ky. 652, 105 S.W.2d 801 (1937), and *Prestonsburg Water Company v. Prestonsburg Board of Supervisors*, 279 Ky. 551, 131 S.W.2d 451 (1939), further quoting from *Colley v. Eastern Coal Corporation*, Ky., 470 S.W.2d 338 (1971), for the same reasoning.

In *City of Louisville*, it was held that machinery used in pasteurizing raw milk was not machinery used in manufacturing. Manufacturing was defined as "a process whereby a transformation must occur and a new and different article must emerge having a distinctive name, character, or use." The opinion described the process as removing impurities from the milk and stated that this process began and ended with milk and, interestingly enough, observed that the process only made clean food to be used.

In *Prestonsburg Water Company*, it was held that the filtration system used to purify water from the Big Sandy River was not manufacturing. The opinion observed that the water as it came from the river contained mud, silt, and acid from refuse from mines, all of which were removed and the water purified and rendered fit for use and consumption, then, relying on *City of Louisville* observed that after the process the article was still water, hence no manufacturing process.

In *Colley*, machinery used to size, crush, and wash coal, thereby removing impuri-

---

1. The earlier cases defining manufacturing were with regard to KRS 132.200, which relates to ad valorem taxation. Recently the same questions have arisen under the Sales and Use Tax Statute.

ties, was held not to be machinery used in manufacturing. There the coal as it was mined and transported to the cleaning plant contained foreign matter and impurities. The process utilized by Eastern reduced the impurity content from 28% to the market standard of 6%. The end product was sold for metallurgical purposes. The opinion observed that the substance was coal when it was extracted from the mine and subjected to the processing and it was coal at the conclusion of the processing, citing *City of Louisville* and *Prestonsburg Water Company.*

It is readily apparent that each of these cases is supportive of the position argued by the Department of Revenue. Milk is milk; water is water; coal is coal; drums are drums—ergo, no manufacturing process. However, this line of reasoning is not in harmony with several other opinions by this court.

In *David J. Joseph Co. v. City of Ashland*, 223 Ky. 203, 3 S.W.2d 218 (1928), this court held that the machinery and mechanical appliances used in a scrap metal yard to change the form and dimensions of scrap metal by cutting it into smaller pieces of relatively uniform size and shape so as to convert the metal into commercial scrap was machinery used in manufacturing.

In *Commonwealth v. W. J. Sparks Co.*, 222 Ky. 606, 1 S.W.2d 1050 (1928), it was held that machinery used to process and crush limestone for use as road material was machinery used in manufacturing. The limestone from the quarry began in large chunks broken into sizes suitable for a crusher and, after being crushed, a screening resulted in uniform sizes suitable for road material.

In *Alcoa Mining Co. v. Dickerson*, Ky., 242 S.W.2d 744 (1951), it was held that machinery used in extracting zinc concentrate from ore bearing rock was held to be machinery used in manufacturing. Briefly, the rock was crushed to a small size, then fed into a ball mill classifier circuit, to a flotation machine where the sphalerite was separated from the waste material, resulting in a marketable material known as zinc concentrate.

By a parity of reasoning to the first cases, scrap should be scrap, limestone should be limestone, and zinc concentrate should be zinc concentrate; yet, in those instances this court held that a manufacturing process had taken place. The opinion in *Colley* takes a look at *Commonwealth v. Sparks*, examines it gingerly, and decides that limestone might be something other than just limestone but the court should ignore all other substances.

We are of the opinion that limiting the definition of manufacturing to a process that transforms the article into a new and different article having a distinctive name, character or use is too restrictive. We regard the basis of the case for the Department of Revenue as an oversimplification. In *City of Louisville*, the end product was milk, a "clean food to be used"; in *City of Prestonsburg*, the end product was water fit for use; and in *Colley*, the end result was coal suitable for the metallurgical market. In this sense something new was produced in the same sense that something new (road material) was produced in *Commonwealth v. Sparks*, in *David C. Joseph* something new (commercial scrap) was produced, and in *Alcoa Mining Co.* something new (zinc concentrate) was produced.

The thread that runs through all of these opinions is that material of little or no market value has been converted into a marketable product for its intended use.

Each opinion speaks of the difficulty of fashioning an all-inclusive definition of manufacturing; yet a variety of definitions, as exemplified by the various cases with differing definitions cited by the Court of Appeals, points up the never ending conflict in adapting one definition to a situation without regard to other authoritative definitions.

■ We are undertaking to define manufacturing once again. We are of the opinion that the definition of a manufacturing process is that: Material having no commercial value for its intended use before processing has appreciable commercial val-

ue for its intended use after processing by the machinery. This is not an entirely new definition. *Burke v. Stitzel-Weller Distillery*, 284 Ky. 676, 145 S.W.2d 861 (1940), used the same reasoning in holding that machinery used in bottling whiskey was machinery used in manufacturing. It was pointed out that in a narrow sense the whiskey is completely manufactured before it is bottled:

> "However, with rare exception relating to rectifiers, other distillers and wholesalers, whiskey cannot be put on the market for the use for which it was intended until it is bottled. It appears that under the authorities, supra, whiskey is not ready for the 'final use for which it is intended' until it is put in bottles in the amounts specified in the statute, and the use to which the bottling machinery was put constituted a part of the 'manufacturing' machinery necessary to make ready the whiskey for the final use for which it was intended."

By analogy these circumstances are no different from the processing of the used drums. *Burke* also points out that the definition of the term manufacturing is a question of law for the courts.

*City of Louisville, Prestonsburg Water Co.*, and *Colley* are not in accord with this definition; and these cases are specifically overruled.

We consider this definition of manufacturing sufficiently restrictive and harmonious with the processes in the opinions setting out varying definitions. A process which involves a material having commercial value for its intended use, that merely upgrades the material so as to increase the value obviously would not be manufacturing.

The Court of Appeals is saying the same in different words: "This is not a case of taking a used drum and ending up with a used drum but is one where the Appellee takes a virtually unusable and non-marketable damaged drum and converts it into a serviceable and marketable commodity." The purpose for which it was intended.

In any event, let us attempt this definition and await the test of future cases in this area.

The judgment of the Court of Appeals is affirmed.

PALMORE, C. J., and CLAYTON, JONES, LUKOWSKY, REED and STEPHENSON, JJ., sitting.

All concur.

STERNBERG, J., not sitting.