SHELBY COUNTY BOARD OF ASSESS-
MENT APPEALS; John S. Hoffman,
Jessel A. Moore and Joseph E. Ballard,
Members of the Kentucky Board of Tax
Appeals; and Department of Revenue,
Commonwealth of Kentucky, Movants,

v.

GRO–GREEN CHEMICAL COMPANY,
INC., Respondent.

Supreme Court of Kentucky.

June 24, 1980.

William S. Riley, Asst. Atty. Gen., Dept. of Revenue, Frankfort, James Hite Hayes, Shelby County Atty., Shelbyville, for movants.

Joseph J. Leary, Frankfort, for respondent.

CLAYTON, Justice.

Gro-Green Chemical Company, Inc. (Gro-Green), operates a fertilizer plant in Shelby County. Gro-Green takes various chemical elements such as nitrogen, phosphate, potash, sulfur, potassium, and boron and blends them in the correct proportion according to the needs of a particular customer. The mixture, or blend, of these fertilizing components is determined primarily by a scientific soil analysis and by the crop and yield the farmer intends to grow.

The issue to be decided by the court is whether the respondent's business operation falls within the definition of "manufacturing" so as to exempt machinery and materials used by the respondent from local taxation.[1] The Court of Appeals, in reversing the Board of Tax Appeals and the Shelby Circuit Court, held that the process by

---

1. The statute in question, KRS 132.200, reads in part as follows:

All property subject to taxation for state purposes shall also be subject to taxation in the county, city, school district or other taxing district in which it has a taxable situs, except those classes of property described in KRS 132.030 and 132.050, and the following classes of property which shall be subject to taxation for state purposes only:

\*    \*    \*    \*    \*    \*

which the separate chemicals are combined in order to produce the proper fertilizing mixture is manufacturing. We concur in that judgment.

This court defined "manufacturing process" as "[m]aterial having no commercial value for its intended use before processing has appreciable commercial value for its intended use after processing by the machinery." *Department of Revenue ex rel. Luckett v. Allied Drum Service, Inc.*, Ky., 561 S.W.2d 323, 325–26 (1978). In *Department of Revenue v. State Contracting and Stone Co., Inc.*, Ky., 572 S.W.2d 421 (1978), we held that the process by which crushed stone and various asphaltic materials were combined in order to produce a usable substance for the building of roads was manufacturing and that the hot-mix storage bins used to homogenize and stabilize the asphalt mixture were directly related to the manufacturing process. This case is substantially analogous.

Both Gro-Green and State Contracting manufacture finished products out of the raw materials they have on hand. The fact that a separate component of the final product, whether it be tar or potash, has, by itself, some commercial monetary value is not dispositive of the issue here. A substance as common as water has commercial value. But when a business operation takes raw materials and combines them to make a viable substance which conforms to the wants and needs of a particular customer the business has, in effect, manufactured something new. Simply because the individual components are not chemically altered does not prevent the process from being labeled "manufacturing."

The decision of the Court of Appeals is affirmed and the cause is remanded to the Shelby Circuit Court for entry of a judgment consistent herewith.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENSON and STERNBERG, JJ., sitting.

PALMORE, C. J., and AKER, STEPHENSON and STERNBERG, JJ., concur.

LUKOWSKY, J., dissents.

LUKOWSKY, Justice, dissenting.

I can not permit the majority's perversion of the taxation statutes of this Commonwealth to become law without publicly expressing my dissent.

The only issue before this court is whether Gro-Green Chemical Company, Inc., in mixing chemical fertilizers, was engaged in manufacturing and therefore entitled to the local tax exemptions for manufacturing machinery and raw materials used in manufacturing. KRS 132.200(4).

The Shelby County Board of Assessment Appeals assessed certain machinery, tools, equipment, and raw materials that belonged to Gro-Green on the theory that the business activity of Gro-Green did not qualify as a "manufacturing process." The Kentucky Board of Tax Appeals and the circuit court affirmed. The Court of Appeals reversed, having concluded that the business conducted by Gro-Green qualified as a manufacturing process.

Gro-Green asserts that it is in the business of "manufacturing" and selling fertilizer. As such, it purchased and carried a stock of such finished products as potash, phosphate, nitrogen, boron and trace chemicals. This manufacturing process was carried out in the following manner. Prescribed chemicals were withdrawn from stock and mixed according to the needs of the soil and the crops to be produced. The content of the mixture, types and amounts of chemicals, was usually determined by a soil analysis. Thus, the fertilizer "manufactured" was tailored to fit the needs of a particular customer. The process used by Gro-Green did not create a new or different chemical as a result of this mixing. These basic ingredients are not changed to a new form.

(4) Machinery and products in the course of manufacture, of individuals or corporations actually engaged in manufacturing, and their raw materials actually on hand at their plant for the purpose of manufacture; . . . .

It is admitted that the chemicals used in the mixing process are basic fertilizers in their own right and usable as such in their unmixed form. In fact, Gro-Green admits that these unmixed chemicals are purchased by its customers separately and used as fertilizer "as is."

In concluding that the Gro-Green process was "manufacturing," the Court of Appeals relied on our opinions in *Department of Revenue ex rel. Luckett v. Allied Drum Service*, Ky., 561 S.W.2d 323 (1978), and *Department of Revenue v. State Contracting and Stone Company, Inc.*, Ky., 572 S.W.2d 421 (1978).

In *Allied Drum*, we again undertook to define "manufacturing." Although the general concept expressed in *Allied Drum* appears to support the conclusion of the Court of Appeals regarding Gro-Green, a critical analysis of the definition leads to the opposite result.

The definition in *Allied Drum* is as follows:

> We are undertaking to define manufacturing once again. We are of the opinion that the definition of a manufacturing process is that: *Material having no commercial value for its intended use before processing has appreciable commercial value for its intended use after processing by the machinery.* (Emphasis added).

The first clause of this definition takes the Gro-Green process out of "manufacturing." In order for there to be a manufacturing process, the primary material (in this case, potash, phosphate, nitrogen, etc.) must have "no commercial value for its intended use before processing." It is admitted that the unmixed chemicals used by Gro-Green are basic fertilizers which are used as such without being mixed with other chemicals. Therefore, they *did* have commercial value for their *intended use* (fertilizer) before being processed by Gro-Green. Consequently, the Gro-Green process was not "manufacturing."

An effort is made to evade the "commercial value" limitation by arguing that after mixing, the value of the product was appreciably increased. However, "value" does not always refer to the monetary value of a product. As I understand it, "commercial value" also refers to "commercial use," "commercial usefulness," and "commercial utility."

In *Allied Drum*, the used and discarded drums being rebuilt and reconditioned by Allied had absolutely no commercial value for their intended use—drums. It was only after Allied had reworked them that they had any appreciable commercial value for their intended use.

In light of the foregoing, the mixing of the chemicals (fertilizers) by Gro-Green did not qualify as manufacturing. After all, the products to be mixed were already finished fertilizers, and, after mixing, the resulting product was fertilizer.

Although it may be true that the mixing process greatly increased the monetary value of the uncombined components, this alone does not bring the process within the definition of manufacturing. In *Allied Drum*, we stated:

> A process which involves a material having commercial value for its intended use, that merely upgrades the material so as to increase the value obviously would not be manufacturing.

This court's opinion in *Department of Revenue v. State Contracting and Stone Company*, Ky., 572 S.W.2d 421 (1978), held that a mixer used in manufacturing of "hot mix" or "asphalt" was a part of the manufacturing process. The opinion would appear to be dispositive of the Gro-Green issue until we reexamine the definition of *Allied Drum*. Bearing in mind the first clause, "material having no commercial value for its *intended use*" (emphasis added), examine the products in *State Contracting & Stone*. The "hot mix" or "asphalt" is a paving material used to put a hard surface on roads. The components of this "hot mix" included rock, sand, tar, petroleum products, and chemical agents. Not one of the components of "hot mix" has any commercial value for its intended use—paving a hard surface road. It is only when all these components are mixed that we have a ma-

**158** <span style="background:black"> </span>

terial of appreciable commercial value for its intended use—paving a hard surface road.

Such is not the case with Gro-Greem components. Each chemical used in the mixing process had a "commercial value for its intended use before processing." We must also recognize that the mixer in *State Contracting & Stone* was merely the addition of a step to a pre-existing, continuous process in the same plant which was itself conceded to be "manufacturing." As a result, this case is not, as the majority says "substantially analogous" to *State Contracting & Stone*.

Gro-Green is like a bartender who in response to the order of his customer for a Martini, a Dry Martini, a Very Dry Martini or an Extra Dry Martini mixes already manufactured gin with already manufactured vermouth in varying proportions to suit his customer's palate. They do no more than sell already manufactured products plus a service, mixing. A "mixologist" is not a "manufacturer" and from the taxation point of view his lot should not be such a happy one.

The view which I express is supported by the following cases: *City of Louisville v. Ewing Von-Allman Dairy Co.*, 268 Ky. 652, 105 S.W.2d 801 (1937) (holding that machinery used in pasturizing milk was not machinery used in manufacturing); *Prestonsburg Water Company v. Prestonsburg Board of Supervisors*, 279 Ky. 551, 131 S.W.2d 451 (1939) (holding that the filtration system used to purify water was not manufacturing); *Colley v. Eastern Coal Corporation*, Ky., 470 S.W.2d 338 (1971) (holding that machinery used to size, crush, and wash coal was not machinery used in manufacturing).

I would reverse the decision of the Court of Appeals and affirm the judgment of the Shelby Circuit Court.