JACKSON EXCAVATING COMPANY,
Petitioner-Appellant,

v.

ADMINISTRATIVE HEARING COMMIS-
SION of the State of Missouri, Michael
C. Horn, Commissioner, and Department
of Revenue of the State of Missouri,
Ray S. James, Director of Revenue, Re-
spondents.

No. 63768.

Supreme Court of Missouri,
Division No. 1.

Feb. 23, 1983.

John L. Oliver, Jr., Cape Girardeau, for petitioner-appellant.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondents.

JAMES R. REINHARD, Special Judge.

The sole question presented on this appeal is whether machinery and equipment used to process "raw" water into potable water is machinery used in manufacturing and, thus, exempt from the sales and use tax.

In 1977, petitioner, Jackson Excavating Company, entered into a contract with Missouri Utilities Company of Cape Girardeau, Missouri, to construct a water treatment purification plant, known as Treatment Plant No. 2. In the course of completing the contract, petitioner purchased and installed certain machinery and equipment necessary to purify water for human consumption. On December 27, 1979, respondent, the Missouri Department of Revenue, assessed petitioner for unpaid use tax in the amount of $4,378.52, based upon an audit covering the period from January 1, 1977, to December 31, 1978. On January 9, 1980, petitioner filed a petition for review with the Administrative Hearing Commission claiming the machinery and equipment was exempt from the use tax pursuant to § 144.030.3(4), RSMo. 1978.[1]

The Administrative Hearing Commission determined that the machinery and equipment installed in Treatment Plant No. 2 were not exempt from the tax because they were not used in a manufacturing process. Following that decision, petitioner filed with this Court a petition for judicial review pursuant to § 161.337. This Court has jurisdiction to review the final decision of the Administrative Hearing Commission because construction of a revenue law of this State is involved. Mo. Const. Art. V, § 3; *Goldberg v. Administrative Hearing Commission,* 609 S.W.2d 140, 142 (Mo.banc 1980).

Section 161.338 provides that a decision of the Administrative Hearing Commission:

shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record, ... and if the approval or disapproval of the exercise of authority in question by the

---

1. All citations are to RSMo.1978, unless otherwise noted.

administrative hearing commission does not create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency.

But of course, where a question of law is involved, it is a matter "for the independent judgment of the reviewing court, and correction where erroneous." *Daily Record Company v. James,* 629 S.W.2d 348, 351 (Mo.banc 1982).

Section 144.030.3(4) provides that the following machinery and equipment shall be exempt from sales tax:[2]

> Machinery and equipment, and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption;

The facts are undisputed. The following machinery and equipment were incorporated into Treatment Plant No. 2: aerator tank, induced draft aerator with accessories, blowers, header-lateral overdrain with accessories, a rapid mix device, backflow preventor, manganese greensand, and hardware.

The water purification process entails no less than five major steps and at least eight separate functions which are performed in order to make the water potable and salable. First, raw water is drawn from the ground table in a 120-foot well and brought up to the purification plant. The raw water is then channeled into the aerator where oxygen is introduced to oxidize the iron and manganese contained in the water. In addition, this process removes carbon dioxide and hyrogen sulfide from the water. After the water passes through the aerator, chemical polymers and chlorine are added at the chemical feeds. The water then proceeds to the rapid mix where these chemicals are thoroughly mixed with the water. After it leaves the rapid mix, the water is transported to the clarifier where a polymer precipitates the oxidized iron and manganese particles. In addition, potassium manganate, a strong oxidizer, is added to oxidize any remaining iron and manganese and to regenerate the manganese greensand. Flouride is also added at this point for tooth protection. The next step involves filtering, where the iron and manganese oxide particles are removed. The water is drawn from the filters and transferred to a large pipe where zinc polyphosphate is added for corrosion control. A final chlorination then takes place to entirely disinfect the water and prevent bacteria from invading the system, thereby completing the water purification process. At each stage of the process, the backflow preventor operates to prevent processed or partially processed water from flowing into unprocessed water and also to prevent substances already removed from flowing back into the potable water.

The water purification plant installed in Cape Girardeau was required by the regulations promulgated by the Missouri Department of Natural Resources, Division of Environmental Quality, under the Missouri Public Drinking Water Program, which are set forth in 10 CSR 60–4.070. These regulations make it illegal to dispense water having secondary contaminants above certain stipulated levels.

The Missouri Sales/Use Tax Law does not define "manufacturing." The term is not easy to define since it has many applications and meanings that vary depending upon the circumstances of its use. *State ex rel. AMF Incorporated v. Spradling,* 518 S.W.2d 58, 60 (Mo.1974).

This Court has used two different definitions of "manufacturing" within the context of § 144.030.3(4). In *West Lake Quarry & Material Co. v. Schaffner,* 451 S.W.2d 140 (Mo.1970), this Court held that the process of grinding, crushing, and sorting quar-

---

2. Section 144.615(3) makes this exemption applicable to the use tax. *Floyd Charcoal Co. v.* *Director of Revenue,* 599 S.W.2d 173, 176 (Mo. 1980).

ried rock into various sizes for many different commercial uses was manufacturing. The Court quoted with approval from *City of Louisville ex rel. v. Howard,* 306 Ky. 687, 208 S.W.2d 522, 527 (Ky.1947), which defined manufacturing as a process that "takes something practically unsuitable for any common use and changes it so as to adapt it to such common use...." 451 S.W.2d at 143.

In *Heidelberg Central, Inc. v. Director Dept. of Rev.,* 476 S.W.2d 502 (Mo.1972), this Court without reference to *West Lake Quarry* or its definition of manufacturing held that printing presses used to produce business forms, stationery, printed advertising, postcards, and church bulletins, were entitled to the use tax manufacturing exemption because "[t]he printers ... did produce new and different articles from raw materials by the use of machinery, labor and skill, and they produced products for sale which had an intrinsic and merchantable value, and were in forms suitable for new uses." 476 S.W.2d at 506.

In *State ex rel. AMF Incorporated v. Spradling,* 518 S.W.2d 58 (Mo.1974), we ruled that the process of retreading a worn tire carcass and making it usable was not manufacturing. There, we cited both *West Lake Quarry* and *Heidelberg Central* and held that the process fit within neither definition; that is it neither involved the "transformation of original raw material" nor did it involve "taking something practically unsuitable for any common use and changing it so as to adapt it to such common use." 518 S.W.2d at 62.

Finally, in *Wilson & Co., Inc., v. Department of Revenue,* 531 S.W.2d 752 (Mo.1976), this Court held that the conversion of live hogs into marketable portions of food for human consumption and into other marketable production fit the definitions of manufacturing set forth in *West Lake Quarry* and *Heidelberg* because it was "a 'process which took something practically unsuitable for any common use and changed it so as to adapt it to ... common uses' " and it was " 'the production from raw material of new and different salable articles for new and different uses.' " 531 S.W.2d at 755.

The Department of Revenue takes the position that the process of water purification employed by Missouri Utilities Company does not produce a *new* article, but begins with water and ends with water. Thus, it contends that the process is not manufacturing. It also asserts that water as pumped from the well is already suitable for common use, and therefore cannot be the subject of a manufacturing process. The petitioner admits in its brief that water does have a "common use" for irrigation purposes before it is purified.

The Department of Revenue, though, admits that the question of whether the treatment or "purification" of water constitutes manufacturing for tax purposes has never been addressed by this Court. In support of its position, the Department relies upon *Fountain v. St. Joseph Water Co.,* 352 Mo. 817, 180 S.W.2d 28 (Mo.1944) and the Annotation in 17 A.L.R.3d 7, 58 (1968). In *Fountain v. St. Joseph Water Co.,* the issue was whether a water company, engaged in the business of purifying water it extracted from the Missouri River for sale to its customers, was a "retailer" and, therefore, exempt from the Fair Labor Standards Acts of 1938. The Court in *Fountain* examined the company's water purification process, and determined that it was a retailer of water, not a manufacturer. Given that the issue in *Fountain* concerned the exemption provided by Congress in the Act for "retailers," and that the consideration of whether the water company was engaged in "manufacturing" was in a context wholly unrelated to that term as used in § 144.030.3(4), we find the Department's reliance upon *Fountain* misplaced.

In its brief, the Department states, "[i]n several other jurisdictions, the cleansing of water by filtration or distillation has been held not to constitute manufacturing within the meaning of a tax statute. See Annotation 17 A.L.R.3d 7, 58 (1968)." The most recent case cited there on the issue is *Prestonsburg Water Company v. Prestonsburg Board of Supervisors,* 279 Ky. 551, 131 S.W.2d 451 (Ky.1939). In *Prestonsburg*

*Water Company,* the Kentucky court held that the filtration system used to purify water from the Big Sandy River was not used in manufacturing. The court observed that the water as it came from the river contained mud, silt, and acid from refuse mines. These materials were removed and the water was purified and rendered fit for use and consumption. The court concluded that after the purification process the article was still water; hence, no manufacturing.

It is readily apparent this case supports the Department's position. Water is water —ergo, no manufacturing process. However, the Kentucky Supreme Court expressly overruled *Prestonsburg Water Company* in *Department of Revenue v. Allied Drum Service, Inc.,* 561 S.W.2d 323 (Ky.1978). In *Allied Drum Service,* the sole question was whether machinery used to process used metal drums was machinery used in manufacturing and, thus, exempt from the sales and use tax. There, as here, the taxing authority argued no manufacturing occurred because the process ended with the same article with which it began.

The Kentucky Supreme Court observed that cases such as *Prestonsburg Water Company* were supportive of this position, but found the reasoning therein not in harmony with other opinions where manufacturing was found even though the end product was, in the Department's view, nothing new. The Court again examined the facts in *Prestonsburg Water Company* and observed that the end product was something new, "water fit for use," and expressly overruled *Prestonsburg.* 561 S.W.2d at 326.

We agree with the Kentucky Supreme Court that the argument that water is water is an over-simplification. In *West Lake Quarry,* the quarry began with rock and ended with rock; in *Heidelberg Central,* the printers began with paper and ended with paper; in Wilson & Co., the meat packer began with pork and ended with pork. If we were to accept the Department's argument then all three of these cases were wrongly decided. Public awareness of the need for pure drinking water

has resulted in the passage of statutes authorizing the promulgation of rules and regulations for the maintenance of a safe quality of water dispensed to the public. *See* § 640.100–.140, RSMo.Supp.1982, the Missouri Safe Drinking Water Act; 10 CSR 60–4.010.090. As a result, water companies expend millions of dollars on treatment facilities to effectuate the sound public policy embodied in such statutes and regulations. Clearly, water, as examined here, is not just water.

It is also evident that the process here fits within the definition of manufacturing first set forth in *Heidelberg Central* and recognized in *Spradling* and *Wilson & Co.;* a transformation of a raw material by the use of machinery, labor and skill into a product for sale which has an intrinsic and merchantable value in a form suitable for new uses. The process before us makes more than a superficial change in the original substance; it causes a substantial transformation in quality and adaptability and creates an end product quite different from the original. It creates water fit for human consumption. *Allied Drum,* 561 S.W.2d at 323. That the process involves a raw material already suitable for common use is of no consequence. The process fits within one of the definitions of manufacturing which this Court has recognized in the context of § 144.030.3(4).

The judgment of the Administrative Hearing Commission is reversed.

GUNN, P.J., RENDLEN, C.J., and CRANDALL, Special Judge, concur.

BILLINGS and DONNELLY, JJ., not sitting.